901 So.2d 1006 (2005)
Arnold ROSOFF and Merrill Lynch Trust Company, as Personal Representatives of the Estate of Teresa Rosoff; and Arnold Rosoff and Merrill Lynch Trust Company, as Trustees of the Teresa M. Rosoff Revocable Trust, Appellants,
v.
Doreen HARDING, Appellee.
No. 4D04-725.
District Court of Appeal of Florida, Fourth District.
May 18, 2005.
*1007 James R. George and Carrie S. Robinson of Ruden, McClosky, Smith, Schuster & Russell, P.A., and Mark R. Manceri of Mark R. Manceri, P.A., Fort Lauderdale, for appellants.
George Elias, Jr., Miami and Christine M. Moreno of Christine M. Moreno, P.A., Stuart, for appellee.
WARNER, J.
The issue in this appeal involves the application of the doctrine of dependent relative revocation to a will in which the decedent failed to exercise a power of appointment in accordance with its terms. Appellant claims that the court should apply the doctrine to revive the clause of a prior will in which the power was also exercised. Because it is not shown from the testamentary documents before the court that the testator preferred the prior exercise of the power over her current testamentary scheme, the doctrine of dependent relative revocation cannot be applied. We therefore affirm.
Raymond Molinari executed a will on May 1, 1974. In his will, he created a testamentary trust ("Molinari Trust") for the benefit of his sister, Teresa Rosoff, during Teresa's lifetime. Molinari granted Teresa a general power of appointment that allowed her to dispose of the balance of the trust in her discretion. Specifically, this provision in Molinari's will provided:
The balance remaining in the trust account after the bequest in paragraph (d) above is accomplished, I give devise and bequeath to such persons or person, or body corporate, and for such use and purposes as my sister Teresa M. Rosoff, shall by her Last Will and Testament, or by codicil thereto, in writing, direct, limit and appoint, provided always that in any such exercise of her power of appointment that is executed within eighteen months (18 months) of her demise, shall be invalid, unless the same shall have been prepared and executed in the presence of such officers of my Corporate Trustee as may be delegated to perform in that capacity.
The will provided that in the event Teresa failed to exercise her power of appointment as provided, the balance of the trust would be divided evenly between Eleanor Eichman, Doreen Harding, and Yvonne Ford. They were required to survive Teresa in order to be entitled to the corpus.
Molinari died in January 1982. Thereafter, Teresa executed her first will. In paragraph 10 of this will, Teresa provided:
In Paragraph 11(e) of the Will of my late brother, RAYMOND P. MOLINARI, dated May 1, 1974, he provided me with a power of appointment which he required that I exercise by my last Will or a Codicil thereto in writing. He further provided that any such exercise of the power of appointment executed within 18 months of my death shall be invalid unless the exercise shall have been prepared and executed in the presence of officers of the corporate Trustee acting pursuant to his Will. This Will has been prepared and executed in the presence of such officers.
She then designated several beneficiaries to the Molinari Trust with specific dollar bequests and directed that the balance of such property go to her nephew, Arnold J. Rosoff. On October 12, 1983, Teresa republished her 1982 will through a codicil. In the codicil she merely removed one of the beneficiaries of the will, leaving the exercise of the power of appointment over the Molinari Trust unchanged. On June 25, 1991, Teresa executed a second will *1008 that expressly revoked all prior wills and codicils. In this will she again exercised the power of appointment in the Molinari Trust in accordance with its terms, including the presence of its corporate officers. She changed some of the beneficiaries of specific monetary bequests but left Arnold as the primary beneficiary of the trust. Teresa attached separate documents to the 1982 will, 1983 codicil, and 1991 will, signed by representatives of Molinari's corporate trustee, in which the representatives stated that the powers of appointment were prepared and executed in his or her presence as directed by Molinari.
On April 28, 2000, Teresa, age 95, executed a third will, in which she revoked all prior wills and codicils. She also executed the Teresa M. Rosoff Revocable Trust. In her 2000 will, Teresa exercised the power of appointment over the Molinari Trust and provided:
In paragraph 11(e) of the will of my late brother, RAYMOND P. MOLINARI, dated May 1, 1974, he provided me with a power of appointment which he required that I exercise by my last Will or a codicil thereto in writing. I hereby exercise the power of appointment referred to in the Will of RAYMOND P. MOLINARI, dated May 1, 1974, directing that the property which makes up the subject matter of the power of appointment be distributed to the then acting Trustees of the TERESA M. ROSOFF REVOCABLE TRUST dated April 28, 2000.
She appointed Arnold and Merrill Lynch Trust Company as the trustees of her revocable trust and as her personal representatives. In the revocable trust, she made cash bequests to individuals, many of whom were the same beneficiaries in whose favor she executed the power of appointment in her previous wills. Also consistent with her prior wills, she directed that Arnold be given the remainder of her trust's assets. However, the trust did not mention the power of appointment, and the gifts through the trust were not conditioned upon anything but Teresa's death. Unfortunately, Teresa did not execute the will or the trust in the presence of the corporate officers of the Molinari Trust trustee, and she died within eighteen months of executing this will and trust.
After the will was probated, Doreen Harding, the only surviving contingent beneficiary of the Molinari Trust, filed a petition objecting to the distribution of the trust assets and challenging Teresa's exercise of the power of appointment over the Molinari Trust assets by will. She asserted the exercise was invalid because Teresa died within eighteen months of the will's execution, and the will was not executed in the presence of the corporate officers of the trustee of the Molinari Trust. Without proper execution, Harding became the sole beneficiary of the Molinari Trust assets. In responding to the petition, Arnold raised several defenses including the doctrine of dependent relative revocation. He argued that the doctrine was needed to effectuate Teresa's testamentary intent, as it was clear that Teresa intended to exercise her power of appointment. In all prior wills she had exercised the power, leaving specific bequests to various beneficiaries and the remainder of the trust assets to Arnold.
Harding moved for summary judgment, and the trial court found that the power was not exercised in accordance with the express provisions of Molinari's will but denied summary judgment on the remaining issues. Arnold then moved for summary judgment and Harding filed a cross-motion for summary judgment before a successor judge, who entered summary judgment in favor of Harding. Arnold appeals that judgment.
Although centuries old, few Florida cases have applied the doctrine of dependent *1009 relative revocation. In Stewart v. Johnson, 142 Fla. 425, 194 So. 869 (1940), the court explained:
This doctrine has been stated and reiterated by many courts since it was first expounded in 1717, but stated simply it means that where testator makes a new will revoking a former valid one, and it later appears that the new one is invalid, the old will may be re-established on the ground that the revocation was dependent upon the validity of the new one, testator preferring the old will to intestacy. Redfearn's Wills and Administration of Estates in Florida, sec. 89, page 121.
In 68 C.J. 799, sec. 483, it is said:
`While the intention to revoke may be conditional, if the revocation is subject to a condition which is not fulfilled the revocation does not take effect. This doctrine is known as that of dependent relative revocation, and is usually applied where the testator cancels or destroys a will or executes an instrument intended to revoke a will with a present intention to make a new testamentary disposition as a substitute for the old, and the new disposition is not made, or if made, fails of effect for some reason.'
Id. at 870. In Stewart, the testator had executed a valid will and later executed a second will that revoked all prior wills. However, the second will was executed in the presence of only one witness, making it invalid. The court applied the doctrine of dependent relative revocation to revive the prior will.
Harding relies on In re Pratt's Estate, 88 So.2d 499 (Fla.1956), for the proposition that the doctrine cannot be used to avoid a validly executed will that expressly revokes all prior wills. In Pratt, the decedent executed a valid will in which he made several charitable bequests. He executed a second will three days before his death, in which he made the same charitable bequests and revoked all prior wills and codicils. Decedent's spouse and children challenged the charitable bequests as a violation of the former mortmain statute, section 731.19, Florida Statutes. The probate court held the gifts invalid under the statute and directed that the gifts pass as intestate property. The charities appealed, claiming that the doctrine of dependent relative revocation could be applied to revive the gifts in the prior will.
The court determined that there were two classes of cases in which the doctrine would apply to revive the prior will. In cases such as Stewart, where the will revoking prior wills failed because of a defect in execution, the doctrine may be applied to revive the prior will. Pratt, 88 So.2d at 501-02. In cases involving codicils to wills, where the bequest in the codicil failed as a matter of law, the doctrine may be applied to revive the bequest in a prior will. Id. at 502.
While Pratt acknowledged that the doctrine could be applied in these types of cases, the court did not apply it to a will validly executed and containing a revocation of prior wills. It said:
The case before us is one wherein the testator, by an unambiguous, complete testamentary instrument, has disposed of all of his property, expressly revoking all prior wills. There is no suggestion of fraud or undue influence. There are no conflicting provisions of testamentary papers necessarily before the court, as in the case of a will and codicils, which might form a basis for the admission of parol evidence for its bearing upon the testamentary intent. We know of no principle of law which would authorize us to look beyond the probated will for testamentary intent in such a case. We do not understand that the `dependent relative revocation' doctrine, useful and salutary as it is in a proper case, carries *1010 with it the authority to disregard so well-established a rule as that which forbids us to write a new will for the testator in the face of a clear intent expressed in a proper instrument.
Id. at 503.
We agree that the doctrine of dependent relative revocation cannot be applied in this case in which there is a completely valid will with an express revocation clause. There is nothing in the will or the trust, other than the exercise of the power itself, from which Teresa's intent can be gleaned. The intent that must be shown is Teresa's intent that, should the exercise of the power of appointment fail, she would prefer its exercise in the prior will over "intestacy," or, in this case, the passing of the property by her brother's designation. Pratt requires that such intent appear exclusively from the probated documents before the court, not in other methods of proof. Id. Unlike In re Jones' Estate, 352 So.2d 1182 (Fla. 2d DCA 1977), where the testator made a statement in her last will that her testamentary disposition was substantially the same as that of her prior will, thus showing her intent to prefer that disposition to intestacy, there is no such provision in Teresa's will or in the trust.
In addition, Teresa's entire estate planning scheme was substantially changed with the creation of the revocable trust and the last will. The trust, and not the will, contained the specific bequests, that were made from the Molinari Trust assets in the prior will. The trust does not mention the Molinari Trust or make the gifts contingent on anything other than Teresa's death. Therefore, as far as we can tell, those gifts would still be made from whatever other assets funded Teresa's trust. Thus, if we applied the doctrine of dependent relative revocation to revive the exercise of the power of appointment in the prior will, the beneficiaries in that will would receive their shares as set forth in the will, yet the beneficiaries of the trust would also receive their bequests as set forth in the trust. Thus, some beneficiaries of both would receive twice as much as Teresa intended. This would not comport with the testator's intent as expressed in either the prior will or the trust.
It is indeed extremely unfortunate that Teresa's apparent intent has been thwarted by failure to abide by the terms of the Molinari Trust. We have presumed that it was unintentional, but it is beyond this court's power to correct this mistake in this action. See Pratt. We find no merit in the other issue raised by appellant.
Affirmed.
POLEN and HAZOURI, JJ., concur.