THE STATE OF FLORIDA and MILLARD CALDWELL, as Governor, et al., v. JOHN RINGLING NORTH and IDA RINGLING NORTH , as Executors, etc., et al. 
APPEAL NO. 1.

ROBERT RINGLING and MRS. CHARLES SANFORD v. JOHN RINGLING NORTH, as Executors, etc., et al. 
APPEAL NO. 2.

MATTIE RINGLING BURNETT and LORENE RINGLING COWGILL v. JOHN RINGLING NORTH and IDA RINGLING NORTH, as Executors, etc., et al. 
APPEAL NO. 3.

32 So. (2nd) 14 
July 22, 1947 
Rehearing denied September 12, 1947.

June Term, 1947 
Division A.

*Mabry, Reaves, Carlton, Anderson, Fields & Ward, O. K. Reaves* and *Doyle E. Carlton,* Special Counsel for Board of Commissioners of State Institutions, *Paul M. Souder, John C. Pinkerton, Poppenhusen, Johnston, Thompson & Raymond* (Chicago, Illinois) ; *Roberts, Roe & Boardman* (Madison, Wisconsin), for Mattie Ringling Burnett and Lorene Ringling Cowgill, *Macfarlane, Ferguson, Allison & Kelley* and *Engel,*

*Judge & Miller* (New York, N. Y.), for Robert Ringling and Mrs. Charles Sanford, for appellants.

*James E. Kirk, Whitaker Brothers* and *Newman & Bisco* (New York, N. Y.), for appellees.

CHAPMAN, J.:

John Ringling, a resident of Sarasota County, Florida, died on December 2, 1936, leaving a last will and testament dated May 19, 1934, and a codicil thereto bearing date of November 2, 1935, both of which were admitted to probate and duly probated in the County Judge's Court of Sarasota County, Florida. At the time of his death he owned and possessed a large and valuable estate situated in the State of Florida and some eight other States of the Union. The value of the estate was fixed at about $23,000,000.00. Ringling had married twice but had no children. This first wife died several years ago and he divorced the second. John Ringling's relatives were Ida Ringling North, sister; Robert Ringling, nephew; Mrs. Charles Sanford, niece; Alice Coerper, niece; Mattie Burnett, niece; Lorene Cowgill, niece; Paul Ringling, grand-nephew; Jane R. Lowry, grand-niece, and Mabel Ringling, grand-niece.

Pertinent portions of the will and codicil are viz: "I, JOHN RINGLING, a resident of Sarasota, in the State of Florida, do hereby make, publish and declare this my last Will and Testament, hereby intending to dispose of all my property, real, personal and mixed, in possession or expectancy, and I hereby revoke all other wills and codicils by me heretofore at any time made; and

"FIRST: I order and direct that all my just debts and funeral expenses be paid as soon as conveniently may be after my decease.

"SECOND: To the State of Florida, I give, devise and bequeath my art museum and residence at Sarasota, Florida, now respectively known as 'The John and Mabel Ringling Museum of Art' and 'Cad D'a' Zan' together with all paintings, pictures, works of art, tapestries, antiques, sculptures, library of art books, which may be contained in said museum and/or residence or which may properly belong thereto as

well as all objects of art which may at the time of my death be held in the name of the Rembrandt Corporation or any other corporation and with respect to which I may have power of disposition, such bequest and/or devise being subject to the following conditions: (a) that my residence be joined to and become a part of 'The John and Mabel Ringling Museum of Art' and be used for the general purpose of hanging Venetian paintings, thereby becoming a museum of Venetian Art; (b) that said Museum shall always be known as "The John and Mabel Ringling Museum of Art' without power in any one to change said name and such name shall appear on all catalogues, printings and stationery issued by and in connection with said Museum; (c) no change by sale, trade or other means shall be made in any of the paintings or objects of art which may be form a part of said Museum at the time of my death; (d) the income and/or principal which may be paid to the State of Florida pursuant to Paragraph 'Fourth' hereof shall be used for the purpose of adding to, embellishing or increasing the contents of said Museum; (e) unless said Museum is endowed by me prior to my death the maintenance of said Museum shall be provided for by the charge of a reasonable admission fee provided, however, that on at least one day per week admission to the public be granted without charge. In the event that the State of Florida shall fail to accept this bequest or devise subject to the conditions as herein expressed, then it shall go to the City of Sarasota, Florida, on the same terms and conditions.

"THIRD: To my wife, EMILY HAGUE RINGLING, I give and bequeath the sum of One Dollar ($1.00) only.

"FOURTH: One-half of the rest, residue and remainder of my estate, I give, devise and bequeath to the trustees hereinafter named, to have and to hold the same in trust, nevertheless, investing and reinvesting the same and paying over the net annual income therefrom in quarterly or other convenient installments to such representatives or agencies of the Government of the State of Florida as may have charge, management or control of my art museum and residence hereinbefore devised and bequeathed to said State, and anything herein to the contrary notwithstanding, I specifically

authorize my trustees in their uncontrolled discretion to advance or pay over absolutely any portion of the corpus of said trust estate to the said representatives or agencies of the State Government for the purpose of adding to, embellishing or increasing the contents of said museum. In the event that the State of Florida should fail to accept the bequest or devise as provided for in Paragraph 'Second' hereof, then and in that event this provision shall apply in the same effect to the City of Sarasota, Florida.

"FIFTH: One-half of all the rest, residue and remainder of my estate of every nature, kind and description, in possession or expectancy, I give, devise and bequeath absolutely to my sister, IDA RINGLING NORTH, surviving me, to have and to hold the same to her and her heirs forever, but if I survive my said sister, I give, devise and bequeath such rest, desidue and remainder equally per stirpes to her lawful issue me surviving.

"SIXTH: I hereby nominate, constitute and appoint my said sister, IDA RINGLING NORTH, executrix, and my nephew, JOHN NORTH, executor, of this My last Will and Testament.

"SEVENTH: :I hereby nominate, constitute and appoint my nephew, JOHN NORTH, my nephew, HENRY NORTH, and RANDOLPH WADSWORTH, trustees under this my last Will and Testament.

"EIGHTH: To my executors as such and to my trustees as such, I give full power and authority in their discretion to retain for any purpose of this my Will my property in the real estate and/or investments representing the same at the time of my death, or to sell the same or any part thereof at public or private sale, at such price and upon such terms as to cash or credit as to them may seem best, with power to become purchasers at such sale; and to lease, mortgage, pledge, deal and encumber the same; and for any such purpose to make, sign, seal, execute, acknowledge and deliver any deeds, conveyances, releases, mortgages or other instruments as may be necessary or appropriate in the premises; and to my trustees I give full power and authority to invest and reinvest any funds which may come into their hands in

such securities as to them may seem best, without restrictions as to the character thereof, intending hereby not to limit said trustees to investments prescribed by any statute or rule of court for the investment of trust funds; and I authorize and empower my said trustees to consent to and join in any reorganization plan affecting securities at any time held by them in trust hereunder, and for such purpose, to deposit said securities under any agreement approved by them, and to accept in place thereof new securities and/or cash; and I authorize and empower my executors and trustees to compromise, settle and adjust on such terms as to them may seem desirable, any claims which I may have against others at the time of my death, or which others may have against my estate, and to extend the time of the payment of any obligations due me; and I hereby direct that my executors and trustees shall not at any time or place be required to give any bond or other security for the proper performance of their duties as such executors or trustees, and that my said executors and trustees shall be liable only for their own wilful, wrongful act and not for any error or judgment; and I further direct that the powers, privileges, discretions and immunities herein given to the executors and trustees herein shall pass, belong to and be exercised by their successors and successor and by any substituted trustees or trustee and by such one or more of them as may at any time qualify and act as executor or executors, trustee or trustees hereunder; and in case of any securities taken or purchased by my said trustees at a premium, I direct that they shall not be required to set apart any portion of the income therefrom as a sinking fund to reduce, retire or absorb such premium.

"I, John Ringling, of Sarasota, Florida, do hereby make, publish and declare the following codicil to my last will and testament;

"FIRST: I hereby revoke, annul and make void any and all legacies and bequests in my last will and testament to both my nephews John Ringling North and Henry W. North. For reasons good and sufficient to me I have determined that neither of such nephews shall receive anything whatsoever in

any form, shape or manner from my estate—The legacies so revoked and cancelled shall revert to and become a part of the residuum of my estate and pass accordingly.

"SECOND: All provisions in my will respecting my sister Ida R. North are hereby modified so that she is to receive any income of Five Thousand Dollars per year for and during her lifetime but no more. The legacies so canceled by this provision shall revert to and become a part of the residuum of my estate and pass accordingly.

"THIRD: My Will as modified by this codicil is in all other respects confirmed.

"IN WITNESS WHEREOF I have hereunto set my hand and seal at New York, N. Y. to this Codicil to my Will consisting of two pages each of which bears my signature, this 2nd day of Nevember 1935."

The aforesaid will and codicil devised and bequeathed to the State of Florida a valuable art museum and the residence of the testator situated in the City of Sarasota, Florida, along with other properties. Chapter 18131, Acts of 1937, Laws of Florida, authorized the State of Florida to accept the property conveyed under the terms of the will and codicil and the members of the Board of Commissioners of State Institutions of the State of Florida under said Act were authorized to accept the property for and in behalf of the State of Florida. The State of Florida filed in the Circuit Court of Sarasota County, Florida, under the several provisions of Chapter 87, Fla. Stats. 1941 (FSA), an amended bill in chancery praying (1) for a construction by the court of the will and codicil supra and define and set out the exact interest which the State of Florida now holds or owns in said property along with the alleged interests of the various defendant relatives of the testator; and (2) that the defendants John Ringling North and Ida Ringling North by an appropriate decree be precluded under the terms of the codicil from serving as executor and executrix of the John Ringling Estate, regardless of Paragraph Sixth of testator's will.

The issues were clearly defined by appropriate pleadings of the parties, when testimony was taken by deposition and

before the Chancellor. The parties were heard below on final hearing when a decree of construction and interpretation of the aforesaid will and codicil was entered by the Chancellor. The State of Florida appealed therefrom and here contends that the decree should in all respects be affirmed—except the part thereof which upheld or sustained Paragraph Sixth of the Ringling will, supra, which appointed John Ringling North executor and testator's sister, Ida Ringling North, executrix. The question posed here for adjudication by the State of Florida is viz: Whether the codical to the will nullifies the appointment (in paragraphs sixth and seventh) in the original will of Ida Ringling North as executrix and John Ringling North as executor and John Ringling North and Henry Ringling North as trustees or precludes compensation to them.

Appeals two and three, supra, were taken from the final decree of the Chancellor by the heirs or next of kin of John Ringling, deceased. It is true that several questions have been posed here and briefed and argued by able counsel representing the parties named in appeals two and three. After a careful study and analysis of the questions and authorities cited it does appear that an answer by this Court of the following question should put at rest many of the contentions of counsel for the respective parties named in appeals two and three. Are the heirs and next of kin of the testator, John Ringling, entitled to inherit any part of the Ringling estate as intestate property which the testator failed to effectively dispose of by his will and codicil and whether the codicil was intended to revoke the appointment in the original will both as to executors and trustees?

This Court construed a will in the case of Howe, Executor, v. Sands, 141 Fla. 813, 194 So. 798. We are committed to the rule that the testator's intent, gathered from a study of the whole instrument, must be effectuated and carried out. Our language employed is viz:

"It is well established law, that in the construction of a will the entire instrument will be considered for the purpose of determining the intent of testator, and, if such intent so ascertained is not contrary to law or public policy and is

capable of being made effective to carry out the intent and objects of the will, it becomes the duty of the court, in the absence of a showing to the contrary, to carry out the intent of the testator. See Mosgrove v. Mach, 133 Fla. 459, 182 So. 786; Sternberg v. Florida National Bank, 114 Fla. 580, 154 So. 844; Husson v. Bensel, 124 Fla. 304, 168 So. 395; Wallace v. Wallace, 118 Fla. 844, 160 So. 377. In the early case of Russ v. Russ, 9 Fla. 105, it was held that the intention of the testator is the polar star to guide in the construction of the will. In State v. Beardsley, 77 Fla. 803, 82 So. 794, it was said that it is the duty of the court to give effect to such intention from the entire will where it can be ascertained from the will. It is the intention which the testator expresses in his will that controls and not that which he may have had in his mind. See Rewis v. Rewis, 79 Fla. 126, 84 So. 93. A Will should be so construed by the courts as to effectuate the testator's lawful intent as gathered from a consideration of all the provisions as expressed in the will. See Perkins v. O'Donald, 77 Fla. 710, 82 So. 401."

It is settled law in about all jurisdictions that a testator has the right to name the person who, after his death, shall have charge of his estate for the purpose of administration, provided that such person is not disqualified by law. Schouler on Wills, Volume 3 (6th Ed.) 1741-2, pars. 1494-96; Thompson on Wills (Drafting, Execution, Probate and Contest), 360-64, pars. 410-11; Kidd v. Bates, 120 Ala. 79, 23 So. (2nd) 735; 33 C.J.S. 903-906. The rule is well settled that ordinary courts have no discretion in respect to the issue of letters to the persons nominated in the will, unless such persons are expressly disqualified or such discretion is granted by statute. State ex rel. Lauridsen v. Superior Court, 179 Wash. 198, 37 Pac. (2nd) 209, 95 A.L.R. 819, and Annotations at pages 828 et seq.

The exhaustive, well considered and thorough opinion filed in the court below by the Honorable W. T. Harrison puts at rest the several contentions of counsel and the same is hereby adopted, in part, as the opinion of this Court:

"I. It undisputably appears that it was the clear and positive intention of the testator, John Ringling, to dispose of

his property of every kind, character and nature in, by and under his last will and Testament dated May 19, 1934, the said testator having clearly and positively stated therein, 'hereby intending to dispose of all of my property, real, personal and mixed, in possession or expectancy,' and that the said Will and the Codicil thereto, dated November 2, 1935, lawfully and effectively dispose of the entire estate of the said John Ringling, deceased, and that said John Ringling, deceased, died testate as to all property owned by him at the time of his death.

"II. That it was the clear and positive intention of the decedent, John Ringling, and the legal effect of Paragraph 'SECOND' of his said Will is to pass and bequeath to the State of Florida, subject to certain conditions therein mentioned, his art museum and residence at Sarasota, Florida, now respectively known as 'The John and Mabel Ringling Museum of Art' and 'Cad D' a' Zan' together with all paintings, pictures, works of art, tapestries, antiques, sculptures, library of art books, contained in said museum and/or residence or property belonging thereto as well as all objects of art which at the time of his death were held in the name of the Rembrandt Corporation or any other corporation. That the testator in said Paragraph 'SECOND' of his said Will expressly bequeathed and devised to the State of Florida, 'all objects of art which may at the time of my death be held in the name of the Rembrandt Corporation or any other corporation and with respect to which I may have power of disposition.' It conclusively appears that the decedent, John Ringling, created and maintained the Rembrandt Corporation, for his own use and convenience; that said corporation had no creditors and no assets other than the paintings, pictures and works of art and that the said decedent was at all times president of and owned all of the stock in and all of the assets of the said corporation and had a right to and did view the property of the corporation as his own and thus transferable by his will and the said decedent had the power to dispose of all of the capital stock of the Rembrandt Corporation under his will and it was the intention of the testator and the legal effect of Paragraph 'SECOND' of said Will is to pass and bequeath all of the capial stock in the Rembrandt Corporation to the State of Florida. The testator's intention to bequeath to the State of Florida all works of

art held in the name of the Rembrandt Corporation is further disclosed by his positive direction in his Will:

"(b) that said Museum shall always be known as 'The John and Mabel Ringling Museum of Art' without power in any one to change said name and shall appear on all catalogues, printings, and stationery issued by and in connection with said Museum; (c) no change by sale, trade or other means shall be made in any of the paintings, or objects of art which may form a part of said Museum at the time of my death; (d) the income and/or principal which may be paid to the State of Florida pursuant to Paragraph 'FOURTH' shall be used for the purpose of adding to, embellishing or increasing the contents of said Museum; (e) unless said Museum is endowed by me prior to my death and maintenance of said Museum shall be provided for by the charge of a reasonable admission fee provided, however, that on at least one day per week admission to the public be granted without charge.'

Since all paintings, works of art, etc., which were being exhibited in the Museum or residence at the time of John Ringling's death were owned by the Rembrandt Corporation, any other construction or interpretation placed thereon would turn this gift into a mere meaningless and idle gesture.

"III. That by Paragraph 'THIRD' of the said Will the decedent, John Ringling, bequeathed and gave the sum of One Dollar to his then wife, Emily Hague Ringling, and by Paragraph 'FOURTH' of said Will one-half of the rest, residue and remainder of his estate was given, devised and bequeathed to the Trustees thereinafter named, to-wit: John Ringling North, Henry W. North and Randolph Wadsworth, to hold the same in trust, investing and re-investing the same and paying over the net annual income therefrom in quarterly or other convenient installments to such representatives or agencies of the Government of the State of Florida as may have charge or control of the art Museum and residence, or in the discretion of the said Trustees to advance or pay over absolutely any portion of the corpus of the trust estate for the purpose of adding to, embellishing or increasing the contents of said museum. That the said one-half of the rest, residue and remainder of the testator's estate given to the said Trustees,

constituted no more and certainly constituted no less than the one-half of all the rest, residue and remainder of the testator's estate, of every kind, character and description and in possession of expectancy which the testator by Paragraph 'FIFTH' of his Will gave, devised and bequeathed absolutely to his sister, Ida Ringling North, if she survived him, or if the testator survived his sister, then equally per stirpes to her lawful issue him surviving; it being clear to this court that Paragraphs 'FOURTH' and 'FIFTH' of said Will were intended to and dealt with the entire residuum and divided the same into equal parts, one for the Trustees and the other for the testator's sister, Ida Ringling North, or her issue.

"IV. That Paragraph 'FIRST' of the Codicil revoked and annulled the legacies and bequests to the testator's nephews, John Ringling North and Henry W. North, contained in Paragraph 'FIFTH' of said Will and provided therein that the legacies so revoked and cancelled should revert to and become a part of the residuum of the testator's estate and pass accordingly.

"That Paragraph 'SECOND' of the Codicil modified the legacy in Paragraph 'FIFTH' of said Will to the testator's sister, Ida Ringling North, consisting of the one-half of the residuum of the estate and substituted therefor an income or payment of FIVE THOUSAND DOLLARS ($5,000.00) a year to Ida Ringling North for and during her lifetime but no more and provided that the legacy so cancelled should revert to and become a part of the residum of the testator's estate and pass accordingly.

"That Paragraph 'THIRD' of the Codicil confirmed the testator's Will in all other respects.

"That the said legacies cancelled and revoked by Paragraphs 'FIRST' and 'SECOND' of the Codicil were directed to revert to and become a part of the residuum of the testator's estate and pass accordingly. Since the only other part of the residuum, was that given in trust for the benefit for the State of Florida, there is no other part to which it might attach or become a part on reversion other than the part given to the trustees for the benefit of the State of Florida and even independent of parol testimony and extrinsic evidence this Court

finds that the clear and positive intention of testator as expressed in his said Codicil, was that the same should revert to and pass with that portion of the residuum given to the said Trustees for the benefit of the State of Florida under and by Paragraph 'FIFTH' of said Will.

"That the STATE OF FLORIDA, EMILY RINGLING, the said Trustees, and IDA RINGLING NORTH, constitute and are the sole legatees under and by virtue of the Last Will and Testament of JOHN RINGLING, deceased, and the Codicil thereto; that the legacy bequeathed thereby to EMILY RINGLING is a general legacy in the sum of One DOLLAR that the legacy bequeathed thereby to IDA RINGLING NORTH is a general legacy in the nature of an annuity amounting to $5,000.00 each year during the lifetime of the said IDA RINGLING NORTH, commencing from the date of death of said JOHN RINGLING, deceased, and constituting a fixed and first charge upon the assets of the said Estate of JOHN RINGLING, deceased, after the hereinafter mentioned specific legacy to the State of Florida, without regard to the income therefrom; and that the legacy of the STATE OF FLORIDA is a specific legacy and devise consisting of the John and Mable Ringling Museum of Art at Sarasota, Florida, and the JOHN RINGLING residence at Sarasota, Florida, known as 'Cad D' a' Zan' together with all paintings, pictures, works of art, tapestries, antiques, sculptures, and library of art books contained in said museum and in said residence, or property belonging thereto, at the time of the death of the said JOHN RINGLING, deceased, as well as all of the capital stock of Rembrandt Corporation, a Delaware Corporation, subject, however, to the conditions stated and set forth in Paragraph 'SECOND' of the Last Will and Testament of JOHN RINGLIING, deceased.

"V. That after the payment of all debts, administration expenses, executors' commissions and allowances, attorneys' fees and the aforesaid legacies, all of the rest, residue and remainder of the Estate of JOHN RINGLING, deceased, shall pass to and shall be vested in the Trustees of the charitable trust named and appointed in and by Paragraph 'SEVENTH' of the Last Will and Testament of JOHN RINGLING, de-

ceased, in trust, nevertheless, for the uses and purposes set forth in paragraph 'FOURTH' thereof.

"VI. That none of the following parties to this action, to-wit: PAUL RINGLING, JANE LOWERY, MABEL RING-LING, ROBERT RINGLING, MATTIE RINGLING BUR-NETT, LORENE RINGLING COWGILL, HENRY RING-LING, ALICE RINGLING COERPER, or MRS. CHARLES SANFORD, are legatees, devisees or distributees under the Last Will and Testament of JORN RINGLING, deceased, and the Codicil thereto, and that none of said persons have any interest in the said Estate of JOHN RINGLING, deceased, as heirs at law, next of kin or otherwise.

"VII. . . . "

"VIII. The Court finds that Paragraph 'FIRST' of the Codicil in revoking and annulling the legacies and bequests to both testator's nephews, John Ringling North and Henry W. North, and the recitation therein 'for reasons good and sufficient to me I have determined that neither of such nephews shall receive anything whatsoever in any shape, form or manner from my estate' and the provision 'the legacy so revoked and cancelled shall revert to and become a part of the residuum of my estate and pass accordingly,' clearly meant to and did deal with the legacies to the testator's nephews and did not in the opinion of this Court relate or refer to their appointment as Trustes nor to the appointment of John Ringling North as executor. The purpose and intent of the testator by said Paragraph of the Codicil and the legal effect thereof was to revoke the said legacies to the testator's nephews as contained in Paragraph 'FIFTH' of the said Will and determine that neither of them should receive anything whatsover under the Will as a gift or devise.

"As to Paragraph 'SECOND' of the Codicil which provides 'All provisions in my will respecting my sister, Ida R. North, are hereby modified so that she is to receive an income of Five Thousand Dollars per year for and during her lifetime but no more,' the Court finds that this provision was not intended to and did not revoke the appointment of Ida Ringling North as Executrix and that the purpose and intent of the testator and the legal effect thereof was to modify the said legacy to his

sister, Ida Ringling North, as contained in Paragraph 'FIFTH' of his said Will and did not in the opinion of this Court refer or relate to her appointment as Executrix. To hold otherwise would be solely a speculation or presumption on the part of this Court.

"While it is contended that testator intended to and did revoke the appointment of Ida Ringling North and John Ringling North as Executors and John Ringling North and Henry W. North from acting as Trustees with Randolph Wadsworth as Trustee, there is certainly no clear intent to work such a revocation shown or established and it is not within the province of this Court to assume or presume that such was the intent of the testator.

"That the said Codicil did not revoke the appointment of the Executors named by the testator in his said Last Will and Testament, to-wit, John Ringling North and Ida Ringling North and the said John Ringling North and Ida Ringling North are the duly appointed and acting Executors of the estate of the said John Ringling, deceased, with all of the powers set forth in Paragraph 'EIGHTH' of the Last Will and Testament of John Ringling, deceased.

"That the said Codicil did not revoke the appointment of John Ringling North and Henry W. North as Trustees named and appointed by the testator in his said Last Will and Testament and that the said John Ringling North and Henry W. North together with Randolph Wadsworth are the duly appointed and acting Trustees of the charitable trust contained in the Last Will and Testament of John Ringling, deceased, with all of the powers set forth in Paragraph 'EIGHT' of the said Last Will and Testament of John Ringling, deceased."

The decree appealed from is hereby affirmed.

THOMAS, C. J., BUFORD and BARNS, JJ., and TAYLOR, Associate Justice, concur.

TERRELL, Justice, and PARKS, Associate Justice, agree to the opinions prepared by Mr. Justice CHAPMAN except as to the appointment of John North as Executor and John and Henry North as Trustees. It is our view that these appointments were revoked by the Codicil to the Will. We therefore dissent from this point of the majority opinion.