Beverly **ROEPKE et al., Respondents,**

v.

**WESTERN NATIONAL MUTUAL IN-
SURANCE COMPANY, Appellant.**

**No. 49602.**

Supreme Court of Minnesota.

Jan. 30, 1981.

Cousineau, McGuire, Shaughnessy & Anderson, Mark L. Pfister, Robert McGuire, and Harold J. W. Sweet, Minneapolis, for appellant.

Stephen I. Dokken, Faribault, for respondents.

Heard before OTIS, ROGOSHESKE, and WAHL, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This matter is now before this court on appellant's petition for rehearing, which we hereby grant. The original decision of this court was filed on January 18, 1980. Because of a typographical error in the original, this opinion is written in substitution.

Defendant, Western National Insurance Company, appeals from an order of the district court granting partial summary judgment in favor of plaintiffs, the surviving spouse and minor children of Lawrence B. Roepke. The trial court allowed stacking of no-fault insurance coverages on six vehicles owned and insured by a corporation wholly owned by plaintiffs' decedent, thereby enabling plaintiffs to recover the limits of no-fault benefits covering the six vehicles. The court, however, certified the stacking question as important and doubtful pursuant to Minn.R.Civ.App.P. 103.03(i). Upon the unique and peculiar facts of this case, we affirm.

The relevant facts are undisputed. Lawrence B. Roepke died on October 4, 1976, when a van which he was driving collided with a truck on Minnesota Trunk Highway No. 3 north of Faribault. He was found dead at the scene of the accident.[1]

At the time of the accident, decedent was the president and sole shareholder of the Rice County 66 Oil Company, a corporation. The corporation owned the van decedent was operating at the time of his death and five other vehicles. Decedent and the members of his household used the six vehicles as family vehicles and owned no others.

The corporation paid separate premiums for coverage on each of the six vehicles under a single automobile policy with defendant. The policy specifies the corporation as the sole named insured, and provides coverage for survivors' benefits up to a maximum of $10,000 on each vehicle.

The sole issue on appeal is whether the stacking of survivors' benefit coverages on the six vehicles should be allowed under our no-fault act on these peculiar facts. In *Wasche v. Milbank Mut. Ins. Co.*, 268 N.W.2d 913, 919 (Minn.1978), we interpreted our no-fault act, Minn.Stat. §§ 65B.41–.71 (1978), and held that:

> [T]he injured person shall be allowed to recover basic economic loss benefits under each no-fault coverage applicable to him as an insured to the extent of actual losses up to the stacked policy limits of all policies applicable on a single priority level.

That holding permits stacking of only those insurance coverages applicable at a single priority level. In *Wasche*, the relevant priority level was Minn.Stat. § 65B.47, subd. 4(a) (1978): "The security for payment of basic economic loss benefits applicable to injury to an insured is the security under which the injured person is an insured." Since the injured party in *Wasche* was an insured under more than one insurance coverage, stacking of coverage was allowed.

Plaintiffs argue that, since stacking would clearly be allowed if decedent had been doing business as a sole proprietor and owned the vehicles, equity and fairness justify application of *Wasche* to allow stacking of all six coverages afforded by the corporate policy. Defendant distinguishes *Wasche* on the ground that decedent was not an "insured" under the applicable poli-

---

1. The cause of decedent's death, whether due to the accident or a heart attack, is a subject of dispute between the parties but is not relevant to the certified stacking question.

cy. Defendant further argues that, because decedent was an employee of the named insured, Rice County 66 Oil Company, a different priority level than that used in *Wasche,* namely Minn.Stat. § 65B.47, subd. 2, should apply. That section provides:

> In case of injury to an employee, or to his spouse or other relative residing in the same household, if the accident causing the injury occurs while the injured person is driving or occupying a motor vehicle other than a commuter van furnished by the employer, the security for payment of basic economic loss benefits *is the security covering the vehicle* or, if none, the security under which the injured person is an insured.

(Emphasis added.) Defendant insists, and we agree, that this priority level precludes stacking of coverages.

However, we are not persuaded by defendant's arguments with respect to the applicability of § 65B.47, subd. 2, because on the peculiar facts of this case we believe decedent should be viewed as an "insured" and § 65B.47, subd. 4(a), should be applied. To reach this conclusion, it is necessary to pierce the corporate veil so that the decedent is considered the insured.[2]

■ The concept of piercing the corporate veil is equitable in nature, as noted by this court in *Erickson-Hellekson-Vye Co. v. A. Wells Co.,* 217 Minn. 361, 15 N.W.2d 162 (1944):

> Disregarding the legal concept that a corporation is a distinct entity, courts of equity have repeatedly held that where an individual owns all, or practically all, the stock of a corporation, the corporation and such individual will be regarded as one and the same if the equities of a case so require.

217 Minn. 381–82, 15 N.W.2d at 173. *See also In re Warner's Trust,* 263 Minn. 449, 117 N.W.2d 224 (1962); *General Underwriters, Inc. v. Kline,* 233 Minn. 345, 46 N.W.2d 794 (1951); *In re Will of Clark,* 204 Minn. 574, 284 N.W. 876 (1939).

The practice of piercing the corporate veil is generally a creditor's remedy used to reach an individual who has used a corporation as an instrument to defraud creditors. *See G.G.C. Co. v. First National Bank of St. Paul,* 287 N.W.2d 378 (Minn.1979). Here, our concern is with a different application of the theory, an application which defendant has characterized as a "reverse pierce." In this case we are not faced with a creditor attempting to pierce the corporate veil to reach an insider; instead we must consider an insider (or someone claiming through him) attempting to pierce the corporate veil from within the corporation. In this case the pierce is advocated so that the corporate shareholder and the corporate entity shall be considered one and the same.

The courts of several states have recognized the "reverse pierce" in probate proceedings. *See, e. g., State v. North,* 159 Fla. 351, 32 So.2d 14 (1947); *In re Greenfield Estate,* 457 Pa. 114, 321 A.2d 922 (1974); *In re Burrs Estate,* 175 Misc. 725, 24 N.Y.S.2d 940 (1941). In these cases a shareholder has made a specific testamentary disposition of property owned by a corporation, rather than devising corporate stock. These courts have disregarded the corporate entity because the testator owned all, or substantially all, of the stock, treated the property as his own, and, most importantly, because no shareholder or creditor would be adversely affected. Thus the "reverse pierce" makes possible an equitable result otherwise unavailable.

Minnesota has indirectly recognized the "reverse pierce" of the corporate veil in *In re Warner's Trust, supra.* In that case the Warner trust was the sole shareholder of a corporation which in turn owned some rental property. For purposes of trust administration this court disregarded the corporate entity and considered the trust the owner of the property. *See also Manufacturers Building, Inc. v. Heller,* 306 Minn. 180, 235 N.W.2d 825 (1975); *Central Motors and*

---

**2.** A discussion of piercing the corporate veil is contained in Note, *Disregard of the Corporate Entity,* 4 Wm.Mitchell L.Rev. 338 (1978).

*Supply Co. v. Brown*, 219 Minn. 467, 18 N.W.2d 236 (1945); *In re Koffend's Will*, 218 Minn. 206, 15 N.W.2d 590 (1944).

■ In the instant case, decedent was the president and sole shareholder of the named insured corporation. He treated the insured automobiles as his own and used them for family purposes. These facts, coupled with the fact that no shareholder or creditor would be adversely affected, persuade us that the purpose of the no-fault act, stated in *Wasche* as providing insurance for persons and not vehicles, is best fulfilled by piercing the corporate veil and by holding that decedent was an "insured" under the corporate policy.

■ Our decision to allow stacking in this case does not mean that plaintiffs may automatically recover the maximum no-fault benefits provided under each insurance coverage. As we stated in *Wasche*, the applicable insurance coverages may only be stacked to the extent of the plaintiffs' actual basic economic loss. 268 N.W.2d at 919. Furthermore, any potential workers' compensation benefits that may be received by plaintiffs must be deducted from the no-fault benefits payable as a result of the father's death. *See* Minn.Stat. § 65B.61 (1978).

We conclude that plaintiffs should be allowed to stack the insurance coverages on all six vehicles insured under the corporate PIP plan. We believe that this finding is consistent with *Wasche* and within the legislature's contemplation when enacting Minn.Stat. § 65B.47, subd. 4(a) (1978). However, we limit this holding to the facts peculiar to this case, the most significant of which are that decedent was the president and sole shareholder of the named insured corporation; the vehicles insured by defendant were used as family vehicles; and neither decedent nor members of his household owned any other vehicles.

Affirmed.