**Sharon WAKEFIELD, Respondent,**

v.

**FEDERATED MUTUAL INSURANCE COMPANY, Appellant.**

No. C8–82–963.

Supreme Court of Minnesota.

March 9, 1984.

Charles E. Gillin, George W. Kuehner, Jardine, Logan & O'Brien, St. Paul, for appellant.

Gary Stoneking, Hvass, Weisman & King, Minneapolis, for respondent.

COYNE, Justice.

The issue for decision is the propriety of the trial court's ruling that personal injury protection coverages afforded by a business auto policy insuring fourteen corporately owned motor vehicles may be stacked.

On March 14, 1979, Clyde Wakefield, the president of Bill Kepple Machinery, Inc., was fatally injured while riding in a customer's automobile. Federated Mutual Insurance Company (Federated) paid survivors economic loss benefits of $10,000, as-

serting that that amount exhausted the limits of the personal injury protection afforded under its policy insuring Bill Kepple Machinery, Inc.'s, motor vehicles. Mrs. Wakefield contended, and the trial court agreed, that the no-fault basic economic loss benefits applicable to each of the motor vehicles owned by Mr. Wakefield's corporate employer should be stacked. We reverse.

William Kepple and Clyde Wakefield each owned 50% of the shares of William Kepple Machinery, Inc. Wakefield was the president. The corporation owned fourteen motor vehicles of various types. A 1973 Buick sedan was assigned to Wakefield and was used as a family car by the Wakefields, who did not own an automobile.

All of the corporation's vehicles were insured under one business auto policy issued by Federated. The policy provided liability and physical damage insurance as well as uninsured motorist coverage and personal injury protection (i.e., "PIP" no-fault basic economic loss benefits). A separate premium was charged for each coverage applicable to each motor vehicle insured under the policy. By endorsement William Kepple and Clyde Wakefield were deemed to be named insureds with respect to personal injury protection. A separate premium of $2.00 was charged for each person named in the endorsement.

The plaintiff concedes that the reverse pierce of the corporate veil, on which the decision in *Roepke v. Western National Mutual Insurance Co.*, 302 N.W.2d 350 (Minn.1981), is based, is inapplicable here. *See Kuennen v. Citizens Sec. Mut. Ins. Co.*, 330 N.W.2d 886 (Minn.1983). Relying, however, on the holding in *Wasche v. Milbank Mutual Insurance Co.*, 268 N.W.2d 913 (Minn.1978), the plaintiff contends that the payment of separate premiums for the no-fault benefits applicable with respect to each vehicle described in the corporation's insurance policy warrants stacking of those coverages. In *Wasche* we held that "the injured person shall be allowed to recover basic economic loss benefits *under each no-fault coverage applicable to him* as an

insured to the extent of actual losses...." *Id.* at 919. (emphasis supplied). The issue is whether or not the separate no-fault coverages applicable with respect to each of the corporate vehicles are also applicable to Clyde Wakefield.

■ The priority of applicability of insurance for the payment of basic economic loss benefits is set out at Minn.Stat. § 65B.47 (1982). Subdivision 2 of § 65B.47 identifies the source of basic economic loss benefits payable as a result of an accident involving most employer-furnished vehicles:

> In case of injury to an employee, or to his spouse or other relative residing in the same household, if the accident causing the injury occurs while the injured person is driving or occupying a motor vehicle other than a commuter van furnished by the employer, the security for payment of basic economic loss benefits is the security covering the vehicle or, if none, the security under which the injured person is an insured.

Thus, if Clyde Wakefield or his wife or children had been injured while driving or occupying the 1973 Buick sedan which Kepple Machinery furnished for the Wakefields' use or any other corporately owned automobile or truck, the security covering the involved vehicle would have constituted the source of basic economic loss benefits for each injured member of the Wakefield family. In such an event no-fault benefits would have been payable to the extent of each injured family member's loss, subject to medical expense limits of $20,000 and an aggregate maximum of $10,000 payable on account of work loss, essential services expenses, funeral expenses and survivors' loss. Since the applicable security is that covering the involved motor vehicle, the security covering other corporate vehicles—even though insured under the same policy of insurance—is inapplicable and may not be stacked. *Yaeger v. Auto-Own-*

*ers Ins. Co.,* 335 N.W.2d 733 (Minn.1983); *Roepke v. Western Nat'l Mut. Ins. Co.,* 302 N.W.2d 350 (Minn.1981). Even if the Wakefields had themselves owned one or more automobiles and were insureds under the policy insuring their owned vehicles, that security (with its potential for stacking no-fault benefits) would have been inapplicable pursuant to § 65B.47, subd. 2, since there was security covering the involved corporate vehicle. Furthermore, pursuant to the provisions of both the No-Fault Act and the policy, the Federated policy covering the corporation's motor vehicles would have constituted the security for the payment of no-fault benefits regardless of the presence or absence of an endorsement designating Clyde Wakefield as an insured either by name or by virtue of his corporate office.

■ With respect, however, to injury sustained while driving or occupying or being struck by any motor vehicle other than one furnished by William Kepple Machinery, Inc., neither Clyde nor Sharon Wakefield nor any of the Wakefield children would be eligible for no-fault benefits payable through the Federated policy *except* by reason of the endorsement designating Clyde Wakefield as a named insured with respect to the personal injury protection.[1] Nothing in the Minnesota No-Fault Automobile Insurance Act, Minn.Stat. §§ 65B.41 to 65B.71 (1982) requires a reparation obligor to extend personal injury protection to a corporate insured's employees except while driving or occupying or being struck by an insured corporately owned vehicle. Thus, the applicability of the Federated policy for payment of basic economic loss benefits occasioned by Clyde Wakefield's fatal injury while occupying a vehicle owned not by his employer but by his employer's customer depends solely on the contractual obligation undertaken by the endorsement extending personal injury protection to named individuals—William Kepple and Clyde Wakefield. The premi-

---

1. In conformity with the statutory definition of "insured", an "eligible injured person" entitled to PIP under the Federated policy includes the named insured and his spouse and any person related to him by blood, marriage or adoption who resides in the same household with the named insured.

um charge for the endorsement was $2.00 per named individual.

In short, the applicability of the Federated policy under the circumstances of this case is a function not of the basic plan of reparation security mandated by statute but of an endorsement which is not required by the statute. The coverage afforded by the endorsement is unrelated to and beyond the scope of the coverage afforded by the basic plan of reparation security purchased for a premium based on a per vehicle cost. The premium for the endorsement is based on the number of named individuals listed there; the number of motor vehicles covered in the basic plan and the premium charged for each covered vehicle is immaterial to the premium charge for the endorsement.

Subsequent to the issuance of the trial court's order in this case, we held that no-fault benefits afforded by a commercial policy insuring more than one motor vehicle could not be stacked because the premium cost of the policy, which was based on the amount of the insured's payroll, was not a function of the number of vehicles covered. *Yaeger v. Auto-Owners Ins. Co.*, 335 N.W.2d 733 (Minn.1983). As we observed in *Yaeger*, "The rationale behind stacking is twofold: the legislature requires certain coverages in all policies; and, second, a premium having been paid for that coverage, the insurer is not to receive a windfall in premiums paid for coverage not honored." *Id.* at 737. Neither of these bases is present here. Although personal injury protection is statutorily required in every policy, the extension of coverage provided by the endorsement to the Federated policy is not. The policy in question is not a family policy purchased by a policyholder to cover himself and the other members of his household. It is a commercial policy covering vehicles owned by a business corporation. As required by the statute, the policy affords no-fault benefits for any employee of the corporation or member of the employee's household injured while driving or occupying an insured corporate vehicle. Nothing in the No-Fault Act, however, requires the policy issued to the corporate employer to cover the corporation's employees or members of their families who are injured while occupying or through being struck by any other vehicle.

We have sometimes remarked that basic economic loss benefits protect persons, not vehicles. *Wasche v. Milbank Mutual Insurance Co.*, 268 N.W.2d 913, 918 (Minn.1978). It might also be said that in general basic economic loss coverage follows the person, not the vehicle, for in most instances the No-Fault Act directs the injured person to look to his own policy regardless of whether or not it is associated with the vehicle involved in the accident. The risk being insured by each family policy is principally the risk of injury to the insured party or a covered member of his household, and the premium paid for each policy separately reflects that risk. *Koons v. Nat'l Family Ins. Co.*, 301 N.W.2d 550, 553 (Minn.1981).

Here, however, the risk principally being insured against is the business-related risk of injury to the corporation's employees. The premium paid to cover this risk takes into account the fact that an employee or a covered member of the employee's household injured while a passenger or driver of a vehicle furnished by the corporation comes within a priority level which does not permit stacking. Minn. Stat. § 65B.47, subd. 2 (1982). *Yaeger v. Auto-Owners Ins. Co.*, 335 N.W.2d 733 (Minn.1983). Neither the basic policy nor the premium include the risk of injury to an employee or members of his household in any other circumstances; the statutory plan requires the basic economic loss benefits to follow a particular vehicle rather than a person. Protection against the risk of injury to an employee or member of his household while occupying or through being struck by any vehicle except an insured employer-furnished vehicle is afforded *only* by virtue of the optional endorsement for which a single premium based on the number of individuals named in the endorsement is charged. In this context, then, it is appropriate to say that the endorsement provides single coverage for which only a single premium was paid even though the corporate employer owns several insured

vehicles. Consequently, when either an employee named in the endorsement as an insured or a member of the employee's household is injured, the single payment of benefits does not result in an unearned premium windfall to the insurer. As we said in *Yaeger*, "There is nothing to stack because, in the words of *Wasche*, there is only the single 'no-fault coverage applicable to him as an insured.'" 335 N.W.2d at 738.

▪ The term "stacking" has become so firmly established in insurance jargon that it is easy to forget that the principle of stacking is not enunciated in the No-Fault Act. Neither is it provided by the terms of an insurance policy. To the contrary, the Federated policy contains the customary provision (sometimes called an anti-stacking clause) limiting its liability for no-fault benefits to a maximum of $20,000 for medical expenses and a maximum aggregate amount of $10,000 for the other types of basic economic loss. In *Wasche*, however, we held that a policy provision which would deprive the insured of the mandatory coverage for which he had paid on each insured motor vehicle was void as against public policy and repugnant to the No-Fault Act. On the other hand, the unarticulated premise underlying the decision in *Yaeger* is that if—as is true in the present case—the single payment of benefits does not result in an unearned premium windfall to the insurer, the limitation of liability provision is compatible with both public policy and the No-Fault Act.

▪ Finally, the proposition urged on us by the respondent—that although the statute precludes the stacking of no-fault benefits if the involved vehicle is an employer-furnished vehicle insured under the policy, the non-compulsory no-fault benefits provided by endorsement should be stacked if the involved vehicle is not associated with either the employer or the policy—seems to us anomalous. We hold that the no-fault benefits provided by optional endorsement cannot be stacked since the premium charge reflects a single coverage for the particular risk assumed.

Reversed.

TODD, Justice (dissenting).

I respectfully dissent. The majority opinion correctly identifies the issue: namely, " * * * whether or not the separate no-fault coverages applicable with respect to each of the corporate vehicles are also applicable to Clyde Wakefield." Absent the endorsement adding Clyde Wakefield as a named insured, I would agree with the majority opinion.

However, in this case, the insurer, by its policy, added more coverage than was required by the statute. The endorsement form is entitled "Named Individuals—*Broadened* Personal Injury Protection Coverage Endorsement" (emphasis supplied). Clyde Wakefield's name appears in the column entitled "Name of Individual" and Minnesota appears in the column entitled "State." Beneath these columns the following language appears: "It is agreed that an individual named in the schedule of this endorsement shall be deemed to be a named insured with respect to the personal injury protection afforded for the *State* shown on the schedule" (emphasis added).

Minnesota permits stacking. The insurance policy states: " * * * the insurance afforded applies separately to each insured who is seeking coverage * * *." The policy by its terms allows Wakefield's heirs to stack the coverage notwithstanding the fact that the statute would have permitted less coverage.

We should adhere in this case to our holding in *Wasche v. Milbank Mutual Insurance Co.*, 268 N.W.2d 913 (Minn.1978), where we allowed stacking for priority level insurance coverage. The personal insurance policies of *Wasche* were stacked because the plaintiff was an insured on those policies. The resolution of the instant case simply follows from *Wasche*. Since respondent was a named insured, he is allowed to stack all those policies under which he is a named insured.

Wakefield's situation must also be compared with the facts in *Roepke v. Western National Mutual Insurance Co.*, 302 N.W.2d 350 (Minn.1981). In *Roepke*, plaintiff was not a named insured on his corpo-

rate policy. The corporation owned the vehicle Roepke was allowed to use and in which he eventually died. The insurer in *Roepke* had a good argument that the policies should not be stacked since Roepke was not expressly named as an insured in the policy. The insurer lost only because we applied a "reverse pierce" theory to allow Roepke's survivors to stack six personal injury protection coverages available under the corporate policy. We found that Roepke, as a 100% shareholder, and the corporation were one insured. Roepke's corporate insurance was, therefore, actually personal insurance.

The facts of this case are closely aligned with the *Roepke* situation, but one salient fact sets them apart. Respondent in this case is, by the express terms of the policy, a named insured. The analysis need proceed no further. Respondent, as named insured, is on a priority level of coverage where stacking is permitted. Arguments that respondent was only an employee of the corporation are relevant only when the employee is not a named insured. The term "named insured" imports a special status under the No-Fault Act. For example, being a named insured on one policy prevents one from being an additional insured on a policy naming relatives in the same household as named insureds. *See* Minn.Stat. § 65B.43, subd. 5 (1982); *Wasche v. Milbank Mutual Insurance Co.*, 268 N.W.2d 913 (Minn.1978).

*Wasche* prevents stacking across priority levels. If the corporation in this case had limited itself to the status of named insured or only made respondent a named insured on a certain number of vehicles, the insurer would have limited its exposure. The majority probably would argue that if we follow *Wasche* the insurer could not specify the number of vehicles to which a special endorsement attaches. If, as *Wasche* states, coverage follows the person and not the vehicle, a corporation could not limit stacking to a specified vehicle or vehicles. Arguably, it follows that stacking would be permitted on all vehicles in the corporate fleet. This argument is without merit since a special endorsement is just that—special. The additional coverage pro-vided by the appellant corporation to its employees is not mandatory under the No-Fault Act. The corporation, therefore, can designate to which vehicles the policy is applicable. Without such a provision in the policy limiting the coverage, the insurance company insures the named insured for all those vehicles to which the policy applies. No such limitation exists in the case presently on appeal. A strict reading of the policy reveals that respondent was a named insured on all 14 corporate vehicles. The majority glosses over this vital factual situation in its opinion.

Alternatively, the insurance company could have extracted much higher premiums from the insureds to make others named insureds under the policy. The insurance company charged $2.00 for the endorsement adding Wakefield as a named insured. That, however, is an underwriting problem, not a legal one.

The majority seems to place great reliance on the optional nature of the insurance coverage involved here. Since the coverage is not required, the argument goes, the insurance benefits payable are governed only by the contractual obligation and not by our stacking decisions interpreting the No-Fault Act. I disagree. This court in *Yeager v. Auto Owners Ins. Co.*, 335 N.W.2d 733 (Minn.1983), faced a similar question of whether underinsured motorist coverage, as optional and not mandatory coverage, must be stacked under our decisions. The *Yeager* case involved a commercial policy as in this case. The same arguments made in *Yeager* against stacking policies in a commercial context were also made in this case. The concern is that policies on corporate fleets of 500 to 1000 vehicles or more could be stacked. We held, in *Yeager*, that the optional underinsured motorist coverage could be stacked in a commercial policy.

We declined in *Yeager*, however, to address the same question when a large commercial fleet policy was involved. *Yeager* involved seven vehicles and this case involves only 14, hardly a large corporate fleet. Nonetheless, the number of vehicles does not alter the result of stacking dictated by *Wasche*. To avoid stacking, all a

corporate insurer need do is avoid naming an employee as named insured on a policy covering multiple vehicles. An insurer could limit coverage to a specific vehicle or vehicles or to the vehicle in use by the insured at a given time. This would be sufficient to obviate stacking while still extending desired coverage to employees. As previously mentioned, an insurer could charge accordingly for the additional coverage in anticipation of stacking. Whatever choice an insurer makes, it must be achieved contractually and not by radically modifying *Wasche* as is suggested here. I would affirm the trial court.

YETKA, Justice (dissenting).

I join in the dissent of Justice Todd.

SCOTT, Justice (dissenting.)

I join in the dissent of Justice Todd.