Les BARTON and Cynthia Zschokke, Respondents (C0–95–1248), Plaintiffs (C2–95–1249),

v.

Emily L. MOORE, Jack I. Moore, individually and d/b/a K–TWN Communications and d/b/a K–Twin, petitioners, Appellants,

Southwest Suburban Broadcasting, Inc., et al., Defendants,

Jerold A. Gilbert and Stephen C. Fiebiger, Respondents (C2–95–1249).

Nos. C0–95–1248, C2–95–1249.

Supreme Court of Minnesota.

Feb. 13, 1997.

Kay Nord Hunt, Stacy A. DeKalb, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for appellants.

Stephen C. Fiebiger, Minneapolis, Jerold A. Gilbert, North Oaks, for respondents.

Cheryl Hood Langel, Henson & Efron, Minneapolis, for Defendant Southwest Suburban Broadcasting.

## OPINION

GARDEBRING, Justice.

What is the appropriate penalty for lending money under usurious terms in violation of Minn.Stat. § 334.011, subd. 1 (1996): forfeiture of interest only or voiding of the loan? We hold that loans determined to be usurious pursuant to Minn.Stat. § 334.011, subd. 1 are not therefore void, but only subject the lender to loss of interest.

We also affirm the court of appeals on its determination that the complaint at issue here alleged sufficient facts to put the defendants on notice that the lenders relied on a theory of piercing the corporate veil.

This action arises from two loan agreements made in 1990: the first agreement was signed by lender Cynthia Zschokke "for Provider" and "for Les Barton" and by Jack and Emily Moore "for Receiver" and "on behalf of KTWN." The Moores owned stock in KTWN Communications, Inc. ("KTWN"), which was engaged in the broadcasting business.[1] The agreement stated that the provider would lend $25,000 to the receiver for use as an "emergency fund" in the business of KTWN. It further provided that the loan would be repaid through receipt by the provider of $40,000 in stock in KTWN or a new corporation, or alternatively, by payment of $40,000 to the provider. If neither of these options was exercised by either party within two years, the agreement stated that "the fund [would] * * * be returned to provider along with interest computed at 15% annually." These options gave the lenders either a 15% or a 60% return on their investment depending on which option was exercised.

The second loan agreement, made several months later, was signed by Zschokke as "Lender, for Les Barton," and by Jack Moore, "for KTWN Communications, Inc." This agreement was for the loan of $3,777 and provided that KTWN would repay the full amount plus $377 within 30 days, which is the equivalent of a 120% annual interest rate.

In December 1992, KTWN was dissolved and the lenders subsequently brought this action in August 1994 to recover on the unpaid loans. The complaint incorporates five claims: the first claim, entitled "Breach of Contract," is asserted against the Moores for breach of the first loan agreement. This claim characterizes the first loan agreement as one made between the lenders and the Moores individually. The second claim entitled "Second Alternative Claim: Breach by Corporation" is asserted against "Defendants" for breach of the first loan agreement. As an alternative theory, this claim characterizes the first loan agreement as one made between the lenders and KTWN, but seeks to hold all the defendants liable for breach of that agreement.[2] The third claim entitled "Loan" characterizes the second loan agreement as one made between the lenders and "Defendants" and merely asserts that the loan has not been repaid.[3]

In response to the complaint, the Moores moved to dismiss pursuant to Minn. R. Civ. Pro. 12.02(e). The Moores argued that they were not personally liable for the corporate obligations of KTWN and alternatively, that even if they were found to be personally liable, the loans were usurious and thus void.

---

1. The Moores also owned stock and were the first directors of Southwest Suburban Broadcasting, Inc. ("Southwest"). Initially, both KTWN and Southwest were defendants in this lawsuit. In the complaint, the lenders allege that Southwest is a successor corporation to KTWN and is liable for the obligations of KTWN. The lenders subsequently dismissed all claims against Southwest so that KTWN is the only remaining corporate defendant in this action.

2. In this action, the lenders argue that it is the second claim upon which they seek to pierce the corporate veil so as to properly assert a claim of liability against the Moores.

3. The last two claims of the complaint are equity claims of promissory estoppel and constructive trust. Neither of these two claims were raised on appeal.

In opposition to the motion, the lenders argued that their complaint pleads two theories of liability against the Moores—that the loan agreements were made with the Moores as individuals and that KTWN actually served as the alter ego of the Moores. On the issue of usury, the lenders argued that usurious loans are not entirely void, but result in the forfeiture of interest only.

The trial court granted the Moores' motion to dismiss and awarded them sanctions, concluding that the Moores were not individually liable for the loans and that the complaint failed to state a claim to pierce the corporate veil. The court further held that even if the Moores were personally liable under either theory, the loans were void as usurious. In an unpublished opinion, the court of appeals reversed the trial court's dismissal, holding that the lenders had pled sufficient facts in their complaint to assert a claim to pierce the corporate veil. The court of appeals also reversed the trial court's usury conclusions, holding that a lender of a loan found to be usurious under Minn.Stat. § 334.011 forfeits the interest on the loan, but is entitled to the principal amount.

■ First, we consider whether the lenders pled sufficient facts in their complaint to pierce the corporate veil, so as to properly allege a claim against the Moores.[4] When reviewing cases dismissed for failure to state a claim on which relief can be granted, the only question before us is whether the complaint sets forth a legally sufficient claim for relief. *Elzie v. Commissioner of Pub. Safety*, 298 N.W.2d 29, 32 (Minn.1980) (citing *Royal Realty Co. v. Levin*, 244 Minn. 288, 290, 69 N.W.2d 667, 670 (1955)).

■ A two-prong test to determine when a shareholder can be liable for corporate obligations was articulated in *Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509, 512 (Minn.1979). The first prong focuses on the shareholder's relationship to the corporation. Factors that are significant to the assessment of this relationship include whether there is insufficient capitalization for purposes of corporate undertaking, a failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation at time of transaction in question, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and existence of the corporation as merely a facade for individual dealings. *Victoria Elevator*, 283 N.W.2d at 512. The second prong requires showing that piercing the corporate veil is necessary to avoid injustice or fundamental unfairness. *Id.*

■ Because the lenders challenge the trial court's Rule 12 dismissal on the basis of the pleadings, the *Victoria Elevator* test must be considered in the context of pleading requirements in Minnesota. Under our law, the pleading of broad general statements that may be conclusory is permitted. *Northern States Power Co. v. Franklin*, 265 Minn. 391, 394, 122 N.W.2d 26, 29 (1963). The primary function of notice pleading is to give the adverse party fair notice of the theory on which the claim for relief is based. *Id.* Notice pleading replaces the old system of code pleading, which required the pleading of facts sufficient to constitute a cause of action. *Id.* Consequently, Minnesota does not require pleadings to allege facts in support of every element of a cause of action. *Id.* at 395, 122 N.W.2d at 29.

■ Given the more liberal requirements of notice pleading, we hold that the lenders pled sufficient facts to support a claim to pierce the corporate veil. Although the lenders did not specifically name their theory of liability against the Moores as an alter ego theory, they allege numerous facts sufficient to provide the Moores with notice

---

**4.** Although the lenders appealed the trial court's finding that the Moores were not individually liable as direct parties to the loan agreements, the court of appeals failed to address this issue. Rather, the court of appeals reversed the trial court's dismissal, finding that the complaint stated a claim under the theory of piercing the corporate veil. Because the court of appeals found a sufficient claim to pierce the corporate veil but did not address the lenders' claim against the Moores individually, the court of appeals implicitly disposed of that claim. Furthermore, neither of the loan agreements at issue include terms which personally obligate the Moores to repay the loans. Thus, we conclude that the district court properly dismissed the lenders' breach of contract claims against the Moores as individuals.

of such a theory. The second count incorporates paragraphs one through nine of the complaint, which include several allegations that give notice of the lenders' intention to pierce the corporate veil, including the assertion that the Moores are "personally liable for the obligations of their corporations." This conclusory claim to pierce the corporate veil is sufficient to support a claim against the Moores. *See Northern States Power,* 265 Minn. at 394, 122 N.W.2d at 29. Furthermore, although the lenders are not required to address the factors enumerated in either prong of the *Victoria Elevator* test in their complaint, *see Maurice Sunderland Architecture, Inc. v. Simon,* No. 3–92–493, 1993 WL 750859, at *4 (D.Minn. Dec. 30, 1993), the complaint addresses three of the factors relevant to the first prong of that test. Specifically, the lenders addressed the failure to observe corporate formalities by alleging that the Moores "failed to keep legal entities separate." The lenders also alleged that the corporation exists as a mere facade for individual dealings by pleading that the Moores "have used their various assumed names and corporate names to serve their purposes at the time" and that the corporate headquarters of KTWN is located at the Moores' residence. Finally, the complaint addressed the siphoning of funds by a dominant shareholder by the allegation that funds designated for corporate use by KTWN were actually "transferred by wire into the bank account of Defendant Emily Moore" and were used by the Moores for their benefit. Thus, we affirm the court of appeals and hold that the lenders pled sufficient facts to pierce the corporate veil so as to withstand a motion to dismiss all claims against the Moores.

 Given that the lenders have established a basis on which the Moores may be held liable for the unpaid loans, we now turn to the question of whether the loan agreements are void. Usury is the taking or receiving of more interest or profit on a loan or forbearance than the law allows. *Rathbun v. W.T. Grant Co.,* 300 Minn. 223, 230, 219 N.W.2d 641, 646 (1974). The law of usury is found in chapter 334 of Minnesota Statutes. Section 334.01, the general usury limit, was first enacted during territorial times and provides a standard rate of interest on all loans. The relevant portion of this provision states:

> The interest for any legal indebtedness shall be at the rate of $6 upon $100 for a year, unless a different rate is contracted for in writing. No person shall directly or indirectly take or receive in money, goods, or things in action, or in any other way, any greater sum, or any greater value, for the loan or forbearance of money, goods, or things in action, than $8 on $100 for one year.

Minn.Stat. § 334.01(1) (1996).

Since 1877, the remedy for violations of section 334.01 has been provided by sections 334.02 and 334.03. Act of March 5, 1877, ch. 15, 1877 Minn. Laws 52–53. Specifically, section 334.02 provides a cause of action to recover any interest paid on a usurious loan, as follows:

> Every person who for any such loan or forbearance shall have paid or delivered any greater sum or value than in section 334.01 allowed to be received may * * * recover in an action against the person who shall have received the same * * * the full amount of interest or premium so paid, with costs, if action is brought within two years after such payment or delivery.

Minn.Stat. § 334.02 (1996). Section 334.03 was enacted at the same time as section 334.02 and it provides that all usurious contracts are void except as to a holder in due course. Ch. 15, 1877 Minn. Laws at 52–53.

> All bonds, bills, notes, mortgages, and all other contracts and securities, and all deposits of goods, or any other thing, whereupon or whereby there shall be reserved, secured, or taken any greater sum or value for the loan or forbearance of any money, goods, or things in action than prescribed, except such instruments which are taken or received in accordance with and in reliance upon the provisions of any statute, shall be void except as to a holder in due course.

Minn.Stat. § 334.03 (1996). Thus, borrowers on loans found to be usurious under section 334.01 have long been entitled to two remedies: the borrower was entitled to recover any interest paid on the loan under section 334.02 and the borrower could have the con-

tract voided under section 334.03 so that the borrower would no longer be liable for the principal or interest on the loan.

In 1976, the legislature enacted Minn.Stat. § 334.011 (1996), which specifically limits the interest rate of loans for business or agricultural purposes in an amount less than $100,-000. Subdivision 2 of section 334.011 provides:

> If a greater rate of interest than that permitted by subdivision 1 is charged then the entire interest due on that note, bill or other evidence of debt is forfeited. If the greater rate of interest has been paid, the person who paid it may recover in a civil action an amount equal to twice the amount of interest paid.

Minn.Stat. § 334.011, subd. 2 (1996). Thus, subdivision 2 provides two remedies for usurious business or agricultural loans. First, the entire interest on such a loan is forfeited. Second, if interest on such a usurious loan has already been paid, then subdivision 2 also provides a cause of action to recover an amount equal to twice the amount of interest paid.

On appeal to this court, the parties do not contest that the loan agreements at issue are usurious under section 334.011, subd. 1. Rather, in this case we are asked to resolve an apparent conflict in chapter 334 as to what remedy should apply for business loans found to be usurious under section 334.011, subd. 1. The Moores argue that the loan agreements are void under section 334.03. The lenders, on the other hand, argue that section 334.011, subd. 2 provides the exclusive remedy for the usurious loans at issue so that they are still entitled to the principal amount.[5] If the remedy provided in section 334.03 applies, the usurious loans at issue are then void and the Moores are not obligated to repay the principal or interest on the loans. However, if the remedies of section 334.011, subd. 2 apply, then the Moores are not obligated to pay the interest on the loans,

but they would still be obligated to repay the principal amount.

The lenders rely on our decision in *Citizen's Nat'l Bank of Willmar v. Taylor*, 368 N.W.2d 913 (Minn.1985) to support their position. In that case, we addressed the remedy that should apply for usurious loans under section 334.011, but neither party in that case raised the issue as to whether the general remedy for usurious loans under section 334.03 was applicable. Thus, *National Bank of Willmar* is not persuasive authority for the case at hand.

To support their interpretation of the usury statute, the Moores rely on several decisions by this court, including *Midland Loan Fin. Co. v. Lorentz*, 209 Minn. 278, 296 N.W. 911 (1941); *Phalen Park State Bank v. Reeves*, 312 Minn. 194, 251 N.W.2d 135 (1977); *United Realty Trust v. Property Dev. and Research Co.*, 269 N.W.2d 737 (Minn. 1978); *Utterberg v. Cameron*, 282 N.W.2d 536 (Minn.1979). However, these cases are not relevant here because they involve usurious loans under section 334.01 and do not address the appropriate remedy for violations of section 334.011, subd. 1.

■■■■■■ Given the absence of decisions to guide our analysis in this case, we are left to interpret the usury statute as it stands. Issues of statutory construction are clearly questions of law and are thus fully reviewable by an appellate court. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985). The rules of statutory construction provide that when provisions enacted at different sessions of the legislature are irreconcilable, those provisions enacted at a later session are controlling over earlier provisions. Minn.Stat. § 645.26, subd. 4 (1996). Section 334.03 is a much older remedy; it was enacted in 1877. On the other hand, the remedy provided in section 334.011 was enacted nearly 100 years

---

5. At the trial court, the lenders also argued that the Moores were guarantors of the corporation and are thus denied the defense of usury under Minn.Stat. § 334.021 (1996), which prohibits corporations from asserting the defense of usury. The trial court held that the Moores were not guarantors and the lenders appealed this issue to the court of appeals. However, the court of appeals failed to address this issue and it was not

appealed to this court. Because the court of appeals failed to address the issue, we conclude that its decision implicitly disposed of that claim. Furthermore, neither loan agreement contains terms which obligate the Moores as guarantors of KTWN. Thus, we conclude that the district court properly dismissed the lenders' breach of contract claims against the Moores as individuals.

later in 1976. Because section 334.03 was established law when section 334.011 was enacted, the remedy provided in section 334.011, subd. 2 prevails over the remedy provided by section 334.03.

 The rules of statutory construction further provide that if a general provision in a law conflicts with a special provision in the same law, the special provision should prevail over the general. Minn.Stat. § 645.26, subd. 1. The remedy provided in section 334.03 is a general remedy which voids all loans found to be usurious under the usury statute. However, section 334.011, subd. 2 provides a remedy for specific types of usurious loans, namely business or agricultural loans. Thus, the remedy provided in section 334.011, subd. 2 should prevail as the proper remedy for usurious loans that violate section 334.011, subd. 1 because it provides a remedy for specific types of usurious loans, whereas section 334.03 is the general remedy for chapter 344.

The Moores rely on a recent ruling by the United States Bankruptcy Court to support their position that the loan agreements are void under section 334.03. *See In re Sunde,* 149 B.R. 552 (Bkrtcy.D.Minn.1992). In that case, the bankruptcy court held that section 334.011, subd. 2 is not an exclusive remedy and that loans found to be usurious under section 334.011 could be voided in accordance with section 334.03. *Id.* at 560–61. However, we are not bound by the decisions of that court in matters of state law and decline to adopt its reasoning in *Sunde.*[6]

Guided by the rules of statutory construction, we hold that the appropriate remedy for business loans found to be usurious under section 334.011, subd. 1 is provided by section 334.011, subd. 2. Consequently, usurious lenders under section 334.011, subd. 1 forfeit only the interest and not the principal amount on the loan. We therefore affirm the

court of appeals on this issue. We also affirm the determination by the court of appeals that the lenders pled sufficient facts to support a claim to pierce the corporate veil, thereby asserting a claim of liability against the Moores. Therefore, the case is remanded to the trial court for further proceedings.

Affirmed.

BLATZ, J., took no part in the consideration or decision of this case.

---

6. The court in *Sunde* held that in the absence of any language either limiting the application of section 334.03 or stating that section 334.011, subd. 2 is the exclusive remedy for violations of section 334.011, subd. 1, the plain meaning of the statutes compels the conclusion that the remedy of section 334.03 also applies to violations of section 334.011, subd. 1. *Sunde,* 149 B.R. at 560–61. However, the bankruptcy court overlooked the other rules of statutory construction

mentioned above which would require a different result.

The bankruptcy court further relied on our decision in *Midland Loan Finance Co.* to support their conclusion. 149 B.R. at 561. But as we stated above, our decision in *Midland* was based on a loan found to be usurious under section 334.01, and we did not address the appropriate remedy for violations of section 334.011, subd. 1 in that decision.