**In re Todd Dewaine FREIER, Debtor.**

**R & R Ready Mix, Inc., Plaintiff,**

**v.**

**Todd Dewaine Freier, Defendant.**

**Bankruptcy No. 07–60350.**
**Adversary No. 07–6052.**

United States Bankruptcy Court,
D. Minnesota.

Aug. 25, 2008.

Derek A. Trosvig, Swenson Lervick Syverson Anderson et al, Alexandria, MN, for Plaintiff.

David C. McLaughlin, Fluegel Helseth McLaughlin Anderson & Brutlag, Ortonville, MN, for Defendant.

## FINDINGS, CONCLUSIONS AND ORDER FOR JUDGMENT

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter came before the Court on June 24, 2008, on plaintiff R & R Ready Mix, Inc's. complaint for judgment of non-dischargeability of defendant Todd Dewaine Freier's alleged debt to the plaintiff in the amount of $150,882.97. Appearances are noted on the record. Based upon the pleadings, evidence at the trial and arguments of counsel, the Court, being fully advised in the matter, now makes these findings of fact, conclusions of law and **ORDER** pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I

### SUMMARY

The defendant owned and operated a concrete construction business, T.F. Concrete. The plaintiff furnished concrete for the defendant's projects. The plaintiff claims that the defendant made misrepresentations of material fact and offered a false financial statement in connection with incurring and maintaining a debt with the plaintiff for materials furnished. The parties agree that plaintiff R & R Ready Mix, Inc., is owed the sum of $150,882.97, for cement provided by the plaintiff and remaining unpaid.

The defendant denies the misrepresentation claims and asserts that the debt was incurred by T.F. Concrete, a corporation in which he holds 100% of the stock, not by

him personally. The plaintiff seeks to pierce the corporate veil.

The Court finds that the misrepresentations claimed by the plaintiff were made by the defendant, the corporate veil should be pierced, and, that the debt owed the plaintiff is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (B).

The plaintiff also claims that the defendant breached a fiduciary duty imposed by Minn.Stat. § 514.02 subd. 1(a) in failing to pay for materials purchased, and that the debt is nondischargeable under 11 U.S.C. § 523(a)4.[1] The Court agrees.

## II

### FACTS

The defendant debtor is the sole shareholder, officer, director and employee of T.F. Concrete, Inc., a Minnesota Corporation. T.F. Concrete, Inc. is a building contracting company that performed concrete work, masonry, and construction of residential building foundations. Freier operated T.F. Concrete, Inc. as a part-time, seasonal endeavor performing concrete work in the evenings and weekends generally from mid-April until the beginning of December. He did not perform concrete work during the winter months. The defendant has been employed full-time throughout the year as a machine operator with 3M Company in Alexandria, Minnesota for more than 30 years.

From 2003 through 2005, T.F. Concrete's primary supplier of concrete was plaintiff, R & R Ready Mix, Inc. T.F. Concrete, Inc. received concrete and related services as well as pumping services from the plaintiff on a credit basis in exchange for defendant's promise to pay for

---

1. The plaintiff further claims that the defendant, as an officer of the corporation, breached his duty against self-dealing corporate assets. This claim is rendered moot by piercing the corporate veil and is not considered in the decision.

all materials and services provided by R & R.

The defendant, as the sole officer, director and employee of T.F. Concrete, Inc., prepared all bids for concrete work performed by the corporation. When preparing bids, he would include the cost of the concrete material and add a minimum of 100% for his labor and profit. He testified that he has collected on all of his accounts receivables from customers which included payment for the cost of materials.

Despite receiving payment from its customers, T.F. Concrete failed to pay the plaintiff for a substantial amount of concrete materials. By November, 2004, T.F. Concrete was indebted to R & R in the approximate amount of $160,000.00, for unpaid concrete materials and pumping services. In December, 2004, discussions occurred between the defendant and the plaintiff concerning T.F. Concrete's outstanding account. The defendant offered: to make a payment of $6,000 on or before December 31, 2004; discuss his financial obligations with his bank and relay the status back to R & R Ready Mix, Inc. no later than January 31, 2005; make monthly payments of not less than $500 per month through February, 2005; and, commencing March and April make payments of an additional $5,000 above and beyond payment for any concrete provided. T.F. Concrete immediately defaulted.

In February, 2005, the plaintiff commenced legal action against T.F. Concrete, Inc. in state court seeking judgment for the unpaid materials and services. Freier contacted R & R Ready Mix in an attempt to resolve the legal action and outstanding account. He represented that he had the financial ability to pay $500 per month for February and March, then increase his payments effective April, 2005, to $5,000 or $6,000 per month.

The defendant also indicated that he wished to continue receiving materials from R & R, and that he would keep current any outstanding invoices for new product received, in addition to paying the agreed upon amounts in reduction of the outstanding debt. During discussions between Freier and Dave Luedeke, President of R & R Ready Mix, Inc., Freier represented to Luedeke that he wasn't taking any funds from T.F. Concrete for himself personally, reassuring the plaintiff that he was doing everything he could to pay the outstanding debt.

The representation was false. One week after promising in December, 2004, to make payments toward the outstanding debt, the defendant purchased a Yamaha snowmobile from RB Specialties in Alexandria, MN on January 5, 2005, by charging $3,774.94, for the snowmobile to T.F. Concrete's credit card accounts. During this time, Freier also completed the construction of a large detached garage/building at his residential property and paid for a portion of the costs of the construction with money and assets belonging to T.F. Concrete, Inc. He paid for the cost of the concrete using corporate money, and purchased materials for the project from Western Lumber.[2]

The plaintiff relied upon the representation by the defendant that he wasn't paying himself, believing that the plaintiff would be paid, especially in light of the method that Freier said he used in bidding jobs, and in light of a corporate financial statement dated March 7, 2005, in which Freier represented total corporate assets of $96,234.00 and corporate liabilities of

---

**2.** In all of 2005, Freier diverted for his personal use, by conservative estimate, at least $70,000 from T.F. Concrete.

$85,800.00. But, the financial statement was false, too.

Freier represented in the statement that T.F. Concrete's only creditors were Hometown Community Bank, Bremer Bank, N.A., and GMAC, and that, as of the date of the financial statement of March 7, 2005, T.F. Concrete, Inc. had no other liabilities, debts, or unpaid invoices outstanding to any other entity. The financial statement understated T.F. Concrete's liabilities. The defendant admits that he failed to include several material debts that existed at the time, including $6,000 to Capital One, $7,300 to American Express, at least $5,000 to Western Lumber, $2,000 to Kulzer Skid Loader.

The discussions of the parties and the financial statement resulted in a Settlement Agreement dated March 31, 2005, in which the debtor acknowledged that T.F. Concrete, Inc. owed $159,961.07 with interest and finance charges accruing from and after January 31, 2005. The plaintiff continued to provide services and materials to T.F. Concrete, Inc. during the summer of 2005 on a credit basis. T.F. Concrete, Inc. failed to pay for all new materials as promised, and, by August, 2005, T.F. Concrete, Inc. had defaulted upon the payment schedule provided in the March 2005 Agreement.

On August 25, 2005, Plaintiff sent T.F. Concrete, Inc. a notice of default of the Settlement Agreement. The notice identified T.F. Concrete, Inc.'s failure to make a $7,000 payment due August 10, 2005, failure to pay a July statement in the amount of $11,283.63, and failure to pay an August payment of $18,851.64. The notice demanded payment in full on or before August 26, 2005, in the amount of $37,135.27. Not only did T.F Concrete fail to make the required debt reduction payments, it also failed to pay for new materials that the plaintiff had extended on credit.

Yet, on September 20, 2005, Freier caused T.F. Concrete, Inc. to purchase a new 2006 Chevrolet Pickup for $40,000.00. The down payment was made by trading a 2003, Chevrolet Crew Cab Pickup plus $5,000 cash. The balance was financed through GMAC with monthly payments of $716. 00, per month. T.F. Concrete, Inc. also continued to own a 2004 Chevrolet Pickup with 17,000,00 miles for which it was paying $460 per month. Thereafter, T.F. Concrete, Inc. continued to own the 2004 pickup and the 2006, pickup with a combined monthly payment of $1,176, per month, even though the defendant was the sole employee, shareholder, officer, and director, and T.F. Concrete, Inc. was a part time, seasonal operation.

In addition to purchasing a new pickup, between March 31, 2005, (date of the Settlement Agreement) and September 16, 2005, Freier paid himself $27,250.00 cash from T.F. Concrete's accounts. During this same period, he used corporate funds to pay personal expenditures such as his personal credit card with Citicard, personal phone with Sprint, cell phone plans for his family, personal travel expenses, personal dining, insurance premiums for personal assets, and other "in-kind" income that totaled several more thousand dollars of compensation to the defendant.

Default judgment was entered in favor of the plaintiff against T.F. Concrete, Inc. on September 8, 2005, in the amount of $150,882.97. From entry of the judgment until the defendant's bankruptcy filing on June 11, 2007, the plaintiff tried to collect its judgment through post judgment collection efforts. In response, Freier shut down operation of T.F. Concrete and, on July 28, 2006, he caused a new corporation to be formed under the name of Concrete Productions, Inc. As with T.F. Concrete, Inc., the defendant was the sole shareholder, officer, director, and employee of Concrete Productions, Inc. Freier did not con-

tribute any consideration or capital to the new corporation, but conducted business using all of the tools, machinery, equipment, and assets belonging to T.F. Concrete, Inc. without payment or consideration to T.F. Concrete, Inc.

The defendant deposited $228,605.00, from his concrete activities into the T.F. Concrete, Inc. checking accounts in 2006. Commencing approximately September 15, 2006, he opened separate bank accounts in the name of Concrete Productions, Inc., and from that time forward all income earned by Concrete Productions, Inc. was deposited into the new accounts. Despite having large receipts for 2006, T.F. Concrete made no payments following May 2006, to the plaintiff. Freier wrote checks to himself from T.F. Concrete accounts in excess of $40,000.00 during the year, and, when combined with direct personal purchases and corporate payment of personal expenses, total payment to him personally was conservatively at least $50,000.00.[3]

R & R Ready Mix ultimately sued on April 23, 2007, T.F. Concrete, Inc., Freier, and Concrete Productions, Inc., in state court alleging that T.F. Concrete, Inc. and Todd Freier were alter egos, that T.F. Concrete, Inc. was merely a facade through which the defendant could obtain personal benefit for his personal dealings, and requesting that the court pierce the corporate veils of the corporations. The defendant responded by filing for bankruptcy relief under Chapter 7 of Title 11, United States Code.

## II

## CONCLUSIONS

### Piercing The Corporate Veil.

Piercing the corporate veil is an equitable remedy. *Roepke v. Western*

*Nat'l Mut. Ins. Co.*, 302 N.W.2d 350, 352 (Minn.1981). Piercing the veil depends on the shareholder's relationship to the corporation, and whether veil piercing is necessary to avoid injustice or fundamental unfairness. *Barton v. Moore*, 558 N.W.2d 746, 749 (Minn.1997); *Almac, Inc. v.JRH Dev., Inc.*, 391 N.W.2d 919, 922 (Minn.App. 1986), review denied (Minn., Oct. 17,1986).

Where a shareholder's relationship to the corporation demonstrates that the corporation is simply his alter ego, piercing the corporate veil will be a remedy if necessary to avoid injustice or fundamental unfairness. Significant to the assessment of this relationship, for purposes of this case, are: insufficiency of capitalization for purposes of corporate undertaking; failure to observe corporate formalities; insolvency of debtor corporation at time of transactions in question; siphoning of funds by the sole shareholder; absence of corporate records; and the existence of the corporation as merely a facade for individual dealings. *Barton*, supra, 558 N.W.2d at 749.

T.F. Concrete had no apparent capitalization. Corporate tax records disclose retained earnings in 2004 of approximately $9,000, but, that was distributed to the defendant in 2005. Corporate formalities were not observed. Of the substantial amounts taken by the defendant from T.F. Concrete in 2005, and 2006, for his personal benefit, only the distribution of 2004 retained earnings were accounted for as taxable income to him. All the remaining payments to him or on his behalf were treated as legitimate corporate expenses. T.F. Concrete was insolvent and, under

---

**3.** Amounts deposited into the Concrete Productions, Inc. accounts are unknown, but would be in addition to the $228,605.00, deposited into the T.F. Concrete, Inc.'s accounts for 2006.

the circumstances, the substantial payments for Freier's personal benefit, without reporting them as taxable income, amounted to the siphoning of corporate funds. And, the defendant's creation of Concrete Productions, Inc., in 2006, abandoning T.F. Concrete for the same type of work with T.F. Concrete's assets clearly demonstrate that the existence of both of these corporations were merely facades for the defendant's individual dealings.

█ Where it is demonstrated that the corporate entity has been operated as a constructive fraud or in an unjust manner, the corporate veil will be pierced to avoid injustice or fundamental unfairness. *West Concord Conservation Club, Inc. v. Chilson*, 306 N.W.2d 893, 898 n. 3 (Minn.1981). The defendant operated T.F. Concrete in a fraudulent manner and in breach of fiduciary duties owed the plaintiff, as more fully discussed below. The corporate veil will be pierced and the defendant will be held personally accountable. The debt owed to the plaintiff by T.F. Concrete is also the personal debt of the defendant.

**11 U.S.C. §§ 523(a)(2)(A) and (B).**

11 U.S.C. § 523(a)(2)(A) precludes the discharge of a debt:

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

█ The defendant's assurance to the plaintiff that he was taking no draws from T.F. Concrete was an intentional misrepresentation of a material fact made to induce the plaintiff to forebear collection efforts and to continue to supply the defendant with concrete product and services on credit. The plaintiff relied a great deal on that representation because of the method that the defendant used to bid jobs. Without taking any profit on the jobs, there should have been enough proceeds to pay for the materials used and to make payments on old debt owed to the plaintiff.

11 U.S.C. § 523(a)(2)(B) precludes the discharge of a debt incurred by:

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

█ The written financial statement given to the plaintiff was materially false in that it omitted substantial debt owed by T.F. Concrete to creditors other than the plaintiff. The plaintiff reasonably relied on the financial statement. Again, because of the method that the defendant used to bid jobs, without debt owing other creditors there would be enough to pay for the materials used and to make payments on old debt owed to the plaintiff.[4] The defendant offered the statement to the plaintiff intending to deceive R & R Ready Mix on the extent of the defendant's liabilities.

The misrepresentations made by the defendant result in the debt owed to the plaintiff being nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (B).

---

**4.** The defendant claims that the plaintiff could not have reasonably relied on the statement because the statement omitted the debt owed to the plaintiff as well. But, the plaintiff was already aware of that debt, and was interested to know that there was no additional debt that would interfere with the payment agreement of the parties.

**11 U.S.C. § 523(a)(4).**

11 U.S.C. § 523(a)(4) precludes the discharge of a debt:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

 Whether a relationship is a fiduciary relationship within the meaning of 11 U.S.C. § 523(a)(4) is an issue of federal law. *Tudor Oaks Ltd. Partnership v. Cochrane (In re Cochrane)*, 124 F.3d 978, 984 (8th Cir.1997), cert. denied, 522 U.S. 1112, 118 S.Ct. 1044, 140 L.Ed. 109 (1998). The fiduciary relationship must be one arising from an express or technical trust. *Buchholz v. Cook, (In re Cook)*, 263 B.R. 249, 254 (Bankr.N.D.Iowa 2001). The "technical" or "express" trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law. *Barclays American/Business Credit Inc. v. Long*, 774 F.2d 875, 878 (8th Cir.1985) ("We recognize that there are cases charging individuals, by virtue of their corporate officer status, with the corporation's fiduciary duties. [citations omitted] To the extent these cases hold that a statute or other state law rule may create fiduciary status in an officer which is cognizable in bankruptcy proceedings, we agree."); *Buchholz v. Cook, supra.*, 255.

Minnesota Statute § 514.02 subd. 1(a) reads in relevant part:

acts constituting theft. (a) Proceeds of payments received by a person contributing to an improvement to real estate . . . shall be held in trust by that person for the benefit of those persons who furnished the labor, skill, material, or machinery contributing to the improvement . . .

 The Debtor bid his projects to cover the cost of materials, including the materials furnished by the plaintiff. He then added 100% to the bid to cover his own costs and profit. The defendant had no delinquent or uncollected accounts. Freier did not pay the plaintiff out of the receipts from the projects, as required by Minn.Stat. § 514.02, subd. 1(a). Instead, he expended the proceeds for his own personal use and accounts. The failure to pay the plaintiff out of proceeds received for materials furnished violated the statute and is a nondischargeable debt as a breach of fiduciary duty under 11 U.S.C. § 523(a)(4).

## III

### DISPOSITION

Accordingly, it is hereby **ORDERED:**

Defendant Todd Dewaine Freier owes plaintiff R & R Ready Mix, Inc., $150,882.97, which is not discharged in the debtor's bankruptcy, BKY 07–60350, but remains his personal liability, subject to collection pursuant to state law.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**