*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0254**

Guava LLC, et al.,
Judgment Debtors,

Paul Hansmeier,
Appellant,
vs.

Spencer Merkel,
Defendant,

Qwest Communications Corporation, et al.,
Judgment Creditors,

John Doe 173.19.225.244, et al.,
Respondents.

**Filed August 17, 2015
Affirmed
Cleary, Chief Judge**

Hennepin County District Court
File No. 27-CV-12-20976

Paul Hansmeier, Minneapolis, Minnesota (attorney pro se)

Edward Sheu, Ashleigh Leitch, Best & Flanagan LLP, Minneapolis, Minnesota (for respondents Best & Flanagan LLP and John Doe 173.19.225.244)

        Considered and decided by Rodenberg, Presiding Judge; Cleary, Chief Judge;

and Klaphake, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**CLEARY**, Chief Judge

Appellant Paul Hansmeier challenges the district court's decision to pierce the corporate veil of Alpha Law Firm, LLC (Alpha), and to add Hansmeier as an additional judgment debtor liable for Alpha's judgment debt. Because the district court had the authority to enforce its judgment against Alpha and did not err in piercing the corporate veil, we affirm.

## FACTS

In October 2012, Guava, LLC filed a complaint against respondent Spencer Merkel, alleging violations of Minn. Stat. § 626A.02 (2014) and a civil conspiracy. The complaint described Guava as "a limited liability company that owns and operates protected computer systems, including computer systems accessible throughout Minnesota." Michael K. Dugas, signing for Alpha, appeared on behalf of Guava. Alpha was a limited liability company (LLC) in which Hansmeier was the only member. Hansmeier noticed his appearance as "of counsel" for Guava. Merkel also received communications from Prenda Law, Inc., another of Hansmeier's law firms. No representative of Guava ever appeared before the district court, even despite a later court order to do so, and this court's previous decision noted that it was "unclear . . . whether Guava even exists." *Guava LLC v. Merkel*, No. A13-2064, 2014 WL 3800492, at *1 (Minn. App. Aug. 4, 2014). Dugas and Hansmeier arranged for Merkel's counsel to represent Merkel in Minnesota on a pro bono basis.

Soon after filing the complaint, Guava moved for an order permitting it to subpoena more than 300 internet service providers (ISPs), for disclosure of customer names and addresses. The district court denied the motion, finding that there was no indication that the information sought was relevant and material to the action and that the request was broad and excessive. Guava filed a renewed subpoena motion on 17 ISPs, which the court granted on the condition that the recipients would have the opportunity to move to quash the subpoenas.

In December 2012, several of the ISPs and their customers (John Does) moved to quash Guava's subpoenas, for a protective order, and for dismissal of Guava's action. The district court held a hearing on the matter on January 25, 2013. Dugas, John Steele, and Hansmeier appeared at the hearing on behalf of Guava. Before the district court had an opportunity to rule on the John Does' motions, Guava and Merkel filed a stipulation in which Guava agreed to dismiss all claims with prejudice. The district court later concluded that the lawsuit was merely an attempt to "harass and burden Non-Parties through obtaining IP addresses to pursue possible settlement rather than proceed with potentially embarrassing litigation regarding downloading pornographic movies."

On March 6, 2013, the district court ordered Guava and Dugas to show cause why the court should not award attorney fees and costs to the non-party John Does. On August 7, 2013, the district court issued an order concluding that "Guava LLC and its counsel Michael K. Dugas of Alpha Law Firm LLC acted in bad faith and without a basis in law and fact to initiate this action." As a sanction, the court

3

awarded attorney fees to the John Does and ISPs, for which Guava, Dugas, and Alpha were jointly and severally liable. The sanction award was reduced to judgment on September 20, 2013.

While the proceedings above were ongoing, Hansmeier took steps to defund and dissolve Alpha. Less than two weeks after the January 25, 2013 hearing on the motions to quash, Hansmeier transferred $65,970 from Alpha to Class Action Justice Institute, LLC, of which Hansmeier is the sole member. One week after the order to show cause, Hansmeier transferred $80,000 from Alpha to his personal account. Two weeks after the order granting sanctions against Alpha, Hansmeier dissolved Alpha. In the articles of termination, Hansmeier certified that Alpha did not have any known debts, liabilities, or pending proceedings against it. Hansmeier later claimed he did not have notice of the orders to show cause or the sanctions award against Alpha.

Guava, Dugas, and Alpha appealed from the attorney-fee order on October 30, 2013. They also filed a motion to stay judgment pending the appeal, and requested to deposit the judgment amount by cashier's check with this court as collateral in lieu of a supersedeas bond. This court denied the motion and ordered the judgment debtors to comply with post-judgment discovery.

On January 8, 2014, John Doe 173 moved to add Hansmeier as a judgment debtor, alleging that Hansmeier dissolved Alpha to avoid paying the ordered sanctions. John Doe 173 also sought sanctions against Alpha for failure to comply with post-judgment discovery. The district court granted discovery sanctions but

4

declined to add Hansmeier as a judgment debtor, noting that to do so would alter the factual findings in the order, which were matters that were intertwined with the then-pending appeal.

At the request of one of the judgment creditors, the district court ordered an examination of debtors. Two examinations took place, on June 16 and July 2, 2014, at which Dugas appeared on behalf of himself and Hansmeier appeared on behalf of Alpha. Hansmeier and Dugas testified at the debtors' examinations that Dugas was never employed by Alpha and merely signed in the Alpha signature block as a matter of convenience for mailing purposes. For the first time at the debtors' examinations, Hansmeier testified that he did not "believe that Alpha Law Firm represented Guava." Hansmeier also testified as to Alpha's finances and affairs.

On August 4, 2014, this court issued a decision substantially affirming the district court's judgment. *Guava*, 2014 WL 3800492. Afterward, a judgment creditor moved to add Hansmeier as a judgment debtor. The district court granted the motion, citing the district court's jurisdiction to enforce a judgment during and after appeals, and highlighting the new evidence that came to light in the debtors' examinations showing that (1) Hansmeier had intentionally defunded Alpha and had disregarded the corporate form, (2) Hansmeier's testimony to the court had been inconsistent, and (3) Hansmeier had failed to provide responsive information throughout the proceedings. The district court concluded that it was proper to pierce the corporate veil and hold Hansmeier jointly and severally liable, along with Guava, Dugas, and Alpha, for the sanctions. Hansmeier appeals.

5

## DECISION

## I.

Hansmeier argues that the district court did not have subject-matter jurisdiction to add him as a judgment debtor. Subject-matter jurisdiction includes "not only authority to hear and determine a particular class of actions, but authority to hear and determine the particular questions the court assumes to decide." *Cochrane v. Tudor Oaks Condo. Project*, 529 N.W.2d 429, 432 (Minn. App. 1995) (quotation omitted). "Whether subject-matter jurisdiction exists presents a question of law, which we review de novo." *Anderson v. Cnty. of Lyon*, 784 N.W.2d 77, 80 (Minn. App. 2010) (citing *Tischer v. Hous. & Redev. Auth.*, 693 N.W.2d 426, 428 (Minn. 2005)), *review denied* (Minn. Aug. 24, 2010).

### A.  *Finality of judgment*

Hansmeier argues that the district court lacked subject-matter jurisdiction to amend the judgment because it was final. Generally, the district court's jurisdiction to amend a judgment is terminated once a judgment becomes final. *N. Star Int'l Trucks, Inc. v. Navistar, Inc.*, 837 N.W.2d 320, 323 (Minn. App. 2013). Finality occurs when appellate review is exhausted or the time to appeal a case expires. *See Marzitelli v. City of Little Canada,* 582 N.W.2d 904, 906 (Minn. 1998) ("If the time for appeal from an order expires without appeal having been taken, then the order becomes final and the district court's jurisdiction to amend the order is terminated."); *City of Waite Park v. Minn. Office of Admin. Hearings*, 758 N.W.2d 347, 354 (Minn.

6

App. 2008) (holding that any claims remaining to be decided are "extinguished by operation of the appellate court's decision.").

Even after a decision is final, however, a district court retains jurisdiction to take actions to enforce a judgment. *Johns v. Harborage I, Ltd.*, 664 N.W.2d 291, 296 (Minn. 2003). Enforcement jurisdiction over final judgments is justified because "enforcement is independent of the underlying appellate decision and would not modify the underlying appellate decision in any way." *Id.* at 296 (quotation omitted). Contrary to Hansmeier's assertions that all amendments are foreclosed after a judgment is final, certain amendments are an appropriate use of the court's enforcement jurisdiction.

Enforcement jurisdiction allows a court to add a judgment debtor to an action to determine whether equity requires holding the new party liable for the judgment debt. *Id.* at 296. In *Johns*, the judgment creditor was unable to collect against judgment debtor Harborage, because Harborage's assets had been liquidated and transferred to an entity named Jillians. *Id.* at 293. The supreme court upheld the amendment of the complaint to add Jillians as a judgment debtor, because collection of the judgment from a successor party for equitable reasons was an appropriate enforcement action on a final judgment. *Id.* at 299-300.

The addition of Hansmeier as a judgment debtor is analogous to the enforcement action taken in *Johns*. Here, as in *Johns*, the judgment is uncollectible against the judgment debtor because the judgment debtor has been defunded and dissolved. Also, as in *Johns*, the judgment creditor seeks to collect the judgment

from a related third party for equitable reasons. Therefore, amendment of the judgment to add Hansmeier as a judgment debtor appears to be an appropriate exercise of the court's enforcement jurisdiction.

The cases that Hansmeier relies upon regarding the finality of judgment do not bear upon the question of whether a court may add a judgment debtor to enforce a judgment. *Marzitelli* "stands only for the proposition that a district court does not retain jurisdiction to amend an order while an appeal from that order is pending." *Johns*, 664 N.W.2d at 296. *Mattson v. Underwriters at Lloyds of London*, 414 N.W.2d 717 (Minn. 1987), "merely states that a district court has no jurisdiction to reopen a judgment to allow a party to argue alternative grounds to challenge it after affirmance on appeal." *Id. at* 296. *City of Waite Park* held that a party could not move for additional relief after a matter had been "finally concluded" on appeal. 758 N.W.2d at 351. Here, John Doe did not seek to argue alternative grounds for relief or move for additional relief after the judgment was affirmed on appeal. Rather, John Doe sought to enforce the judgment against Alpha by adding Hansmeier as a judgment debtor, liable for payment of Alpha's judgment debt. We conclude that the district court's enforcement jurisdiction permitted the district court to add Hansmeier as a judgment debtor.

B.      *Whether veil piercing must be brought in a new complaint*

Second, Hansmeier argues that the district court did not have subject-matter jurisdiction to consider whether to pierce Alpha's corporate veil because veil piercing

8

is not part of a district court's post-judgment enforcement jurisdiction and must be brought in a separate action and complaint.

Minnesota law grants the district court broad discretion to grant relief to creditors of LLCs. Minn. Stat. § 322B.833, subd. 1(3)(i) (2014) authorizes the court to grant "any equitable relief it considers just and reasonable in the circumstances" in an action by a creditor of an LLC when the creditor's claim has been reduced to judgment and execution has been returned unsatisfied. Veil piercing is an equitable remedy. *Equity Trust Co. Custodian ex rel. Eisenmenger IRA v. Cole*, 766 N.W.2d 334, 339 (Minn. App. 2009).

As an equitable remedy, veil piercing plainly falls within the category of relief authorized in Minn. Stat. § 322B.833, subd. 1(3)(i). The statutory use of the word "any" further underscores the district court's already-broad discretion in fashioning equitable remedies. *See Gabler v. Fedoruk*, 756 N.W.2d 725, 730 (Minn. 2008) (stating that courts generally have broad discretion in applying equitable remedies). Furthermore, the language of Minn. Stat. § 322B.833, subd. 1(3)(i) specifically authorizes the application of remedies "in an action by a creditor" after a claim has been reduced to judgment and the execution was returned unsatisfied. Because the statute refers to only one action, it authorizes the district court to apply the equitable remedy in the same action in which the creditor's claim was reduced to judgment against an LLC. Therefore, Minn. Stat. § 322B.833, subd. 1(3)(i) authorizes the district court to hear and determine whether to pierce the corporate veil in post-judgment proceedings against an LLC.

9

Although no published Minnesota case specifically holds that a district court may pierce a corporate veil to reach a non-party in post-judgment proceedings, *Johns* clarifies that a non-party may be added as a potential judgment debtor in post-judgment proceedings for equitable reasons. *See Johns*, 664 N.W.2d at 295-96 (allowing post-judgment amendment of the pleadings to add a party and to determine whether that party could be held liable as a successor to the judgment debtor).

In support of their respective positions, the parties cite to several cases from foreign jurisdictions. However, these cases all interpret specific state laws or precedent that define or restrict post-judgment proceedings. *See Green v. Ziegelman*, 767 N.W.2d 660, 667-68 (Mich. Ct. App. 2009) (interpreting Mich. Comp. Laws § 600.6104 as requiring veil piercing to be considered in a new action); *Miner v. Fashion Enter.*, 794 N.E.2d 902, 911-12 (Ill. App. Ct. 2003) (holding that post-judgment proceedings only allow consideration of whether shareholders are holding assets of the judgment-debtor corporation); *Bollore S.A. v. Imp. Warehouse, Inc.*, 448 F.3d 317, 323 (5th Cir. 2006) (holding that a court could not pierce a corporate veil in a proceeding pursuant to the Texas Turnover Statute; *C-Staff, Inc. v. Liberty Mut. Ins. Co.*, 571 S.E.2d 383, 384-85 (Ga. 2002) (holding that Ga. Code Ann. § 9-11-69 does not vest district court with authority to hold non-parties liable through veil piercing); *cf. Farenbaugh & Son v. Belmont Construction, Inc.*, 240 Cal. Rptr. 78, 80 (Cal. Ct. App. 1987) (holding that section 187 of the California Code of Civil Procedure grants district courts broad general enforcement power, which includes veil piercing in post-judgment proceedings). The interpretation of these laws is

inapplicable to our determination of whether Minnesota law permits the district court to take the action it did in this case.

Hansmeier also argues that, without bringing a separate action to pierce the corporate veil, an individual would not have adequate procedural protections and due process. However, the record in this case undermines rather than supports this argument. Here, the record supports the district court's finding that Hansmeier was "afforded a full opportunity to present a defense to his personal liability." Hansmeier submitted thorough reply briefs in response to both motions to add him as a judgment creditor. Hansmeier represented himself and Alpha very actively throughout post-judgment discovery, including filing an opposition to respondents' request for an examination of debtors and submitting multiple letters and motions to the court on Alpha's behalf. In granting the debtors' examinations, the district court found that Hansmeier had adequate notice and time to prepare for the examinations. Hansmeier appeared on behalf of Alpha at the two examinations, during which the court and respondents' attorneys gave Hansmeier multiple opportunities to explain and justify how Alpha was funded and operated. The district court held a hearing, at which Hansmeier appeared, on each of the motions to add Hansmeier as a judgment debtor. As the district court concluded, Hansmeier was afforded due process and an adequate opportunity to present a defense.

## C.     *Other jurisdictional arguments*

Hansmeier argues that the district court did not have jurisdiction to grant relief to parties who did not file or join motions seeking to add him as a judgment debtor,

11

because there was no justiciable controversy as to those third parties. Hansmeier also states that part of the judgment had been satisfied before he was added as a judgment debtor and asserts that adding him as a judgment debtor had the effect of renewing the entire judgment amount, as if the original judgment had never been satisfied. Hansmeier cites no law to support these assertions. We may decline to reach issues that are inadequately briefed on appeal. *State, Dep't of Labor and Indus. v. Wintz Parcel Drivers, Inc.*, 558 N.W.2d 480, 480 (Minn. 1997). We note, however, that the addition of Hansmeier as a judgment debtor does not, as Hansmeier appears to assert, entitle the judgment creditors to collect twice on the same judgment. *See Gronquist v. Olson*, 242 Minn. 119, 127-28, 64 N.W.2d 159, 165 (1954) (stating that if an injured party has accepted full satisfaction of a judgment, the law will not permit double recovery).

## II.

Hansmeier next challenges the district court's decision to pierce on the merits. "In certain circumstances, it is possible to 'pierce the corporate veil' and hold a shareholder personally liable." *Gunderson v. Harrington*, 632 N.W.2d 695, 705 (Minn. 2001) (Gilbert, J., dissenting) (citing *Victoria Elevator Co. of Minneapolis v. Meriden Grain Co.*, 283 N.W.2d 509, 512 (Minn. 1979)). Veil piercing applies to LLCs as well as corporations. Minn. Stat. § 322B.303, subd. 2 (2014). A court may pierce a corporate veil when there is fraud or when the shareholder is the "alter ego" of the corporation. *Gunderson*, 632 N.W.2d at 705.

Veil piercing is an equitable remedy that may be applied to avoid an injustice that would otherwise occur. *Equity Trust*, 766 N.W.2d at 339. "Granting equitable relief is within the sound discretion of the [district] court. Only a clear abuse of that discretion will result in reversal." *Nadeau v. Cnty. of Ramsey*, 277 N.W.2d 520, 524 (Minn. 1979). A district court abuses its discretion if its decision is against the facts in the record or it misapplies the law. *State ex rel. Swan Lake Area Wildlife Ass'n v. Nicollet Cnty. Bd. of Comm'rs*, 799 N.W.2d 619, 625 (Minn. App. 2011).

The district court held Hansmeier liable for the sanctions based on its findings that Hansmeier was Alpha's alter ego and was using Alpha to perpetrate fraud on the court. The alter ego theory of piercing the corporate veil has two prongs. *Victoria Elevator*, 283 N.W.2d at 512. We evaluate each below.

## A.    *Alter ego factors*

The first prong of the *Victoria Elevator* test considers the individual's relationship to the corporation. *Barton v. Moore*, 558 N.W.2d 746, 749 (Minn. 1997). In determining whether the individual is an alter ego of the corporation, courts are concerned with the reality, not form, of how the corporation operated. *Victoria Elevator*, 283 N.W.2d at 512. The factors relevant to that determination include:

> insufficient capitalization for purposes of corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation at time of transaction in question, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records,

13

and existence of corporation as merely facade for individual dealings.

*Id.* A number of these factors must be present for an individual to be an alter ego of a corporation. *Id.*

The district court found that nearly all of the factors were present here, and the record supports these findings. The court found that (1) Alpha was primarily used for Hansmeier's personal purposes, (2) Hansmeier's dealings with Alpha were "in complete disregard for corporate formalities and the separation of personal and business [transactions]," and (3) Alpha was "insufficiently capitalized and deliberately undercapitalized." To support these findings, the district court cited Hansmeier's failure to produce corporate or any other records for Alpha, other than bank statements. The district court also cited Hansmeier's testimony that (1) Alpha was never insured, never had a client trust account, never had any fee agreement or contract, and was "hardly, if at all, used as a law firm," (2) Hansmeier transferred $80,000 from Alpha's account for a down payment on his home and transferred over $300,000 from Alpha's account to a limited liability company that oversaw a trust for the benefit of his family, and (3) nearly all of Alpha's funds came from entities controlled by Hansmeier.

The district court also found that Hansmeier was using Alpha as a facade to perpetrate fraud on the court, citing the fact that Hansmeier and Dugas misrepresented which of them was employed by Alpha and Hansmeier later attempted to convince the court that Prenda Law, not Alpha, was the law firm of

14

record for Guava. The court discredited Hansmeier's testimony as to these matters, noting the inconsistencies in Hansmeier's testimony and that Hansmeier had failed to provide responsive information to the court. Based on all of the above, the district court did not clearly err by finding that Hansmeier was Alpha's alter ego.

## B.    *Fundamental unfairness*

The second prong of the alter ego theory examines the relationship of the veil-piercer to the corporation. *White v. Jorgenson*, 322 N.W.2d 607, 608 (Minn. 1982). It requires the veil-piercer to show that there was "an element of injustice or fundamental unfairness" that would result from not piercing the corporate veil. *Victoria Elevator*, 283 N.W.2d at 512. Injustice or unfairness is present if the individual has used the corporate form to gain "an advantage he does not deserve." *Id.* "Proof of strict common law fraud is not required, but . . . evidence that the corporate entity has been operated as a constructive fraud or in an unjust manner must be presented." *Cole*, 766 N.W.2d at 340 (quoting *Groves v. Dakota Printing Servs., Inc.,* 371 N.W.2d 59, 62-63 (Minn. App. 1985)).

Hansmeier argues that the second prong of the test "requires a finding that Hansmeier used Alpha's liability shield in dealings with John Doe." He asserts that there was absolutely no relationship between John Doe and Alpha or between John Doe and Hansmeier, through Alpha, and therefore that Hansmeier could not have used Alpha's liability shield against John Doe. Hansmeier misinterprets the second prong of the *Victoria Elevator* test, which does not require the district court to make any finding of a particular kind of relationship between the veil-piercer and the

15

corporation or the shareholder. *See Victoria Elevator*, 283 N.W.2d at 512 (requiring only a finding that the corporate entity was operated in an unjust manner or that some injustice or fundamental unfairness would result from not piercing the corporate veil).

Hansmeier also argues that there was no fundamental unfairness to John Doe to support veil piercing. To support this argument, Hansmeier points out that, on appeal, the judgment debtors moved to stay judgment enforcement pending appeal and offered to post certified funds with the trial court administrator. Because John Doe opposed the motion, Hansmeier concludes that John Doe's inability to collect from Alpha was "self-inflicted." Hansmeier appears to argue that, by opposing the motion to stay judgment and post certified funds, John Doe forfeited any claim that Hansmeier had operated Alpha in an unjust manner.

The district court concluded that fundamental unfairness would result if it did not pierce the corporate veil because Hansmeier's actions had prevented the judgment creditors from collecting their judgment against Alpha. The court pointed out that "Hansmeier knew of the possibility of sanctions in this action, transferred Alpha's money away, and terminated Alpha to avoid paying the judgments in this action." The record supports those findings, which clearly show that Hansmeier abused the corporate-liability shield to avoid paying sanctions in a bad-faith lawsuit for which he was responsible. Neither the judgment debtors' motion to post funds nor John Doe's opposition to that motion undermines the conclusion that Hansmeier operated Alpha in an unjust manner. The district court did not clearly err by finding

16

that piercing the corporate veil was necessary to avoid fundamental unfairness. Because both prongs of the *Victoria Elevator* test were satisfied here, the district court did not abuse its discretion by piercing Alpha's corporate veil to hold Hansmeier liable as a judgment debtor.

**Affirmed.**